Robin L. Cohen (rcohen@mckoolsmith.com)
Kenneth H. Frenchman (kfrenchman@mckoolsmith.com)
Alexander M. Sugzda (asugzda@mckoolsmith.com)
MCKOOL SMITH, P.C.
One Manhattan West
395 9th Avenue, 50th Floor
New York, New York 10001

*Attorneys for Plaintiff Thor Equities, LLC*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THOR EQUITIES, LLC, | Civil Action No.: 20-cv-3380 |
| Plaintiff, | **COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| FACTORY MUTUAL INSURANCE COMPANY, | |
| Defendant. | |

Plaintiff Thor Equities, LLC ("Thor"), by and through its undersigned attorneys, as and for its Complaint against Factory Mutual Insurance Company ("FM"), alleges as follows:

**INTRODUCTION**

1.      This diversity action for anticipatory breach of contract and declaratory judgment arises out of Thor's pursuit of—and FM's failure to provide—insurance coverage for its significant losses arising out of the novel coronavirus outbreak.

2.      Thor owns commercial real estate in many of the largest cities in the United States and around the world, and, like virtually every individual or business, it has not been spared by the current pandemic.

3.      Fortunately, Thor purchased commercial property insurance from FM in the form of Mutual Corporation Non-Assessable Policy No. 1063282 (the "Policy," attached hereto as

**Exhibit A**).  In exchange for a significant premium, the Policy provides up to $750 million in coverage for property damage as well as all manner of business interruption losses Thor could experience.  Naturally, the Policy provides coverage for loss of rental income, but in addition to that coverage, the Policy also includes coverage for:

- Loss caused by restriction of access to property, including specifically if caused by an order issued by a civil authority;

- Loss caused by loss or damage to property experienced by Thor's customers or suppliers;

- Loss caused by loss or damage to property near Thor's insured locations that attracts business to Thor's properties;

- Loss caused by delay in startup to properties under construction;

- Loss caused by the actual not suspected presence of communicable disease; and

- Extra expenses incurred to continue business as nearly normal as practicable

4.      Thor has experienced losses that fall within all of these coverages.  Certain tenants have not paid rent to Thor since they have been shuttered by state and city executive orders deeming the tenants' businesses as "non-essential" during the outbreak.  Customers and suppliers have been affected by stay-at-home orders.  Thor's hotels and other properties have been affected by the closure of all attraction properties and the virtual disappearance of travel. Several of Thor's construction projects have been shut down.

5.      Thor has had the confirmed presence of coronavirus at several of its properties.

6.      Based on the preliminary information available to it and its discussions to date with its tenants, Thor expects to suffer at least $20 million in lost rental income as well as other loss and costs in connection with the coronavirus outbreak.  Depending on how long the conditions caused by the outbreak last, those losses could increase substantially.

7.      Thor promptly made a claim for coverage for those losses under the Policy. However, in this time of crisis, FM has not paid any funds to Thor to date, and its response to

date has been merely to indicate it will only consider coverage under the Policy's specific coverages for communicable diseases, which is limited by a sublimit far lower than Thor's expected losses, notwithstanding the fact that Thor has made clear it is making its claim under other applicable coverages that are clearly triggered by the current situation.

8.     Based on that response, Thor has a reasonable belief that FM will not honor its contractual obligations to Thor under the Policy, and Thor brings this action for anticipatory breach of contract and declaratory judgment that it is entitled to the full amount of coverage it paid substantial premiums for and badly needs.

## THE PARTIES

9.     Plaintiff Thor Equities, LLC, is a limited liability company organized under the laws of Delaware, with its principal place of business in New York, New York.  The sole members of Thor are Joseph J. Sitt and Betty Sitt, both of whom are New York citizens.

10.     Upon information and belief, Defendant Factory Mutual Insurance Company is a company formed under the laws of Rhode Island with its principal place of business in Johnston, Rhode Island.  Upon information and belief, at all relevant times hereto, FM was authorized to underwrite insurance policies covering risks in the State of New York.  Upon information and belief, FM has, at all relevant times, conducted business in the State of New York, including engaging in the business of selling insurance and investigating claims dealing with policyholders, property, or activities located in the State of New York.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties to this action and because the amount in controversy exceeds $75,000, exclusive of interest and costs.

12.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS

### I.     The Coronavirus Outbreak and Thor's Losses

13.     Thor owns commercial properties across the United States and around the world, renting those properties to hundreds of tenants that use the properties for all manner of businesses including office space, retail stores (including many of the largest retail chains in the country), restaurants, and bars.

14.     From the first reported case in the United States in January 2020 to the present, the impact of the coronavirus has been staggering.  More than 1,000,000 Americans have had confirmed cases of COVID-19, and more than 60,000 have died.

15.     State and local governments have taken drastic actions in an effort to stem the tide of the disease.  On March 20, 2020, Illinois Governor J.B. Pritzker signed a statewide stay-at-home order that also ordered all non-essential business and operations to cease.

16.     On March 21, 2020, New Jersey Governor Philip Murphy issued Executive Order No. 107, directing all residents to stay at home unless for certain essential activities, and specifically closing "[t]he brick-and-mortar premises of all non-essential businesses."

17.     On March 22, 2020, New York Governor Andrew Cuomo issued the "New York State on PAUSE" executive order, ordering the closure of all non-essential businesses and prohibiting non-essential gatherings.  On April 16, Governor Cuomo extended the order through May 15, 2020, meaning it will be in place, even if not extended further, for more than fifty days. Similar executive orders have been issued by state and municipal governments across the country.

18.     Many of the brick-and-mortar business premises that Thor owns and rents have been shuttered by these various stay-at-home orders.  Many of these properties are commercial real estate in some of the country's largest and most expensive markets such as New York City

and Chicago.  At the same time as these orders went into effect, many of Thor's tenants, unable

to generate revenue, contacted Thor to inform it they could not pay their rent and to request

abatements and/or other accommodations.  As a result, Thor has suffered and will continue to

suffer significant business interruption.

19.     Thor has had confirmed cases of COVID-19 at multiple properties and has had to

take action to secure and preserve those properties, and as of the filing of this Complaint it has

estimated that it will lose in excess of $20 million in rental income alone.  These losses are

ongoing and could increase substantially depending on the length and ultimate severity of the

outbreak and the government response.

## II.     The FM Policy

20.     Thor owns many subsidiaries that directly own the properties listed in Appendix

A of the Policy, the "Schedule of Locations," all of which are insured under the Policy.  FM

issued the Policy to Thor "and any subsidiary, and Thor Equities, LLC interest in any partnership

or joint venture in which Thor Equities, LLC has management control or ownership as now

constituted or hereafter is acquired" for the policy period March 15, 2020 to March 15, 2021.

*See* Ex. A at p. 10 of 92.[1]

21.     To the extent any of Thor's losses are deemed to have taken place prior to March

15, 2020, Thor was insured in the prior year under a policy also issued by FM with materially

identical terms and conditions.  Thor seeks coverage under that policy, Mutual Corporation Non-

Assessable Policy No. 1050440 with the policy period of March 15, 2019 to March 15, 2020, for

any such losses.

---

[1] As the Policy is not consecutively paginated, citations to the Policy are to the page numbers of the PDF document attached as Exhibit A.

22.     The Policy provides a maximum per-**occurrence** limit of liability of $750 million, with various sublimits and time limits.  *See id.* at 12.  Claims are subject to a deductible, as relevant here, of $100,000 per **occurrence**.  *See id.* at 16–17.[2]

23.     **Occurrence** is defined as "the sum total of all loss or damage of the type insured, including any insured TIME ELEMENT loss, arising out of or caused by one discrete event of physical loss or damage."  *Id.* at 78.

## A.  The Policy's Property Damage Coverage

24.     The Policy broadly provides property damage coverage for all risks of physical loss or damage.  Unless damage is clearly included within a listed sublimit, the full $750 million limit of liability is available for Thor's damages.  *See id.* at 10, 12.

25.     The Property Damage section contains several "Additional Coverages" potentially applicable to Thor's coronavirus losses.

26.     The Property Damage section's COMMUNICABLE DISEASE RESPONSE coverage provides:

> If a **location** owned, leased or rented by the Insured has the actual not suspected presence of **communicable disease** and access to such **location** is limited, restricted or prohibited by:
>
> > 1) an order of an authorized governmental agency regulating the actual not suspected presence of **communicable disease**; or
> >
> > 2) a decision of an Officer of the Insured as a result of the actual not suspected presence of **communicable disease**,
>
> this Policy covers the reasonable and necessary costs incurred by the Insured at such **location** with the actual not suspected presence of **communicable disease** for the:
>
> > 1) cleanup, removal and disposal of the actual not suspected presence of **communicable diseases** from insured property; and

---

[2] Terms in bold or capitalized in this Complaint appear in that manner in the Policy.

2) actual costs of fees payable to public relations services or actual costs of using the Insured's employees for reputation management resulting from the actual not suspected presence of **communicable diseases** on insured property.

This Additional Coverage will apply when access to such location is limited, restricted or prohibited in excess of 48 hours.

This Additional Coverage does not cover any costs incurred due to any law or ordinance with which the Insured was legally obligated to comply prior to the actual not suspected presence of **communicable disease**.

*Id.* at 32.

27.     The Policy defines **location** broadly as any building in the Policy's Schedule of

Locations or any building "bounded on all sides by public streets, clear land space or open

waterways."  *Id.* at 77.

28.     **Communicable disease** is defined as any "disease which is . . . transmissible

from human to human by direct or indirect contact with an affected individual or the individual's

discharges . . . ."  *Id.* at 75.

29.     The COMMUNICABLE DISEASE RESPONSE coverage shares a $1 million

aggregate sublimit with the INTERRUPTION BY COMMUNICABLE DISEASE coverage

described below.  *See id.* at 13.

30.     The Property Damage coverage also contains coverage for

DECONTAMINATION COSTS, providing:

If insured property is contaminated as a direct result of insured physical damage and there is in force at the time of the loss any law or ordinance regulating **contamination** due to the actual not suspected presence of **contaminant(s)**, then this Policy covers, as a direct result of enforcement of such law or ordinance, the increased cost of decontamination and/or removal of such contaminated insured property in a manner to satisfy such law or ordinance. This Additional Coverage applies only to that part of insured property so contaminated due to the actual not suspected presence of **contaminant(s)** as a direct result of insured physical damage.

*Id.* at 33–34.

31.     The Property Damage section also has an Additional Coverage for EXPEDITING

COSTS:

> This Policy covers the reasonable and necessary costs incurred:
>
> > 1) for the temporary repair of insured physical damage to insured property;
> >
> > 2) for the replacement of insured equipment suffering insured physical damage; and
> >
> > 3) to expedite the permanent repair or replacement of such damaged property.

*Id.* at 34.

32.     The sublimit for EXPEDITING COSTS and EXTRA EXPENSE (combined) is

$100 million.  *See id.* at 14.  The coverage for EXTRA EXPENSE is part of the Time Element

section and is described below.

33.     The Property Damage coverage contains a "Contamination Exclusion," which

provides:

> This Policy excludes the following unless directly resulting from other physical damage not excluded by this Policy:
>
> > 1) **contamination**, and any cost due to **contamination** including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy.  If **contamination** due only to the actual not suspected presence of **contaminant(s)** directly results from other physical damage not excluded by this Policy, then only physical damage caused by such **contamination** may be insured.

*Id.* at 24.

34.     The Policy defines **contamination** as "any condition of property due to the actual

or suspected presence of any foreign substance, impurity, pollutant, hazardous material, poison,

toxin, pathogen or pathogenic organism, bacteria, virus, disease causing or illness causing agent,

fungus, mold or mildew."  *Id.* at 76.

**B.  The Policy's Time Element Coverage**

35.     In addition to the Policy's coverage for Property Damage, the Policy's Time Element section provides coverage for lost earnings or lost profits (at Thor's option) "directly resulting from physical loss or damage of the type insured" to Thor's property.  *See id.* at 45–46.

36.     The Time Element coverage also "covers expenses reasonably and necessarily incurred by the Insured to reduce the loss otherwise payable under this section of this Policy." *Id.* at 46.

37.     The Time Element section includes EXTRA EXPENSE coverage, defined as "extra expenses to temporarily continue as nearly **normal** as practicable the conduct of the Insured's business."  *Id.* at 50.

38.     Critically for a commercial property owner such as Thor, the Time Element section also includes RENTAL INSURANCE, covering:

> 1) the fair rental value of any portion of the property occupied by the Insured;
>
> 2) the income reasonably expected from rentals of unoccupied or unrented portions of such property; and
>
> 3) the rental income from the rented portions of such property according to bona fide leases, contracts or agreements in force at the time of loss,
>
> all not to include noncontinuing charges and expenses.

*Id.* at 52.

39.     The Time Element section provides an EXTENDED PERIOD OF LIABILITY that applies to RENTAL INSURANCE, covering the reduction of rental income "for such additional length of time as would be required with the exercise of due diligence and dispatch to restore the Insured's business to the condition that would have existed had no loss happened." The Policy has an EXTENDED PERIOD OF LIABILITY of 365 days.  *Id.* at 14, 64

40.     The Time Element section also includes several potentially applicable "coverage extensions."

41.     The CIVIL OR MILITARY AUTHORITY coverage provides:

This Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured during the PERIOD OF LIABILITY if an order of civil or military authority limits, restricts or prohibits partial or total access to an insured **location** provided such order is the direct result of physical damage of the type insured at the insured **location** or within five statute miles/eight kilometres of it.

*Id.* at 58.

42.     The CONTINGENT TIME ELEMENT EXTENDED coverage provides:

This Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured during the PERIOD OF LIABILITY directly resulting from physical loss or damage of the type insured to property of the type insured at **contingent time element locations** located within the TERRITORY of this Policy.

As respects CONTINGENT TIME ELEMENT EXTENDED:

1) Time Element loss recoverable under this Extension is extended to include the following TIME ELEMENT COVERAGE EXTENSIONS:

CIVIL OR MILITARY AUTHORITY
CONTINGENT TIME ELEMENT EXTENDED . . .
EXTENDED PERIOD OF LIABILITY
INGRESS/EGRESS . . . .

*Id.* at 59.

43.     **Contingent time element locations** include "A. any **location**: 1) of a direct customer, supplier, contract manufacturer or contract service provider to the Insured" and "any **location** of a company that is a direct or indirect customer, supplier, contract manufacturer or contract service provider to a **location** described in A1 above." *Id.* at 76.

44.     The Policy has a per-occurrence sublimit for CONTINGENT TIME ELEMENT EXTENDED of $25 million.  *See id.* at 13.

45.     Additionally, the Time Element coverage for INGRESS/EGRESS provides:

> This Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured during the PERIOD OF LIABILITY due to the necessary interruption of the Insured's business due to partial or total physical prevention of ingress to or egress from an insured **location**, whether or not the premises or property of the Insured is damaged, provided that such prevention is a direct result of physical damage of the type insured to property of the type insured.

*Id.* at 59.

46.     The Policy also provides LOGISTICS EXTRA COST coverage for, in relevant part, "extra cost incurred by the Insured during the PERIOD OF LIABILITY due to the disruption of the normal movement of goods or materials: . . . 2) directly between an insured **location** and a **location** of a direct customer, supplier, contract manufacturer or contract service provider to the Insured," as a result of physical loss or damage to property in the U.S.  *Id.* at 60.

47.     The Time Element section also provides coverage for loss suffered by Thor in connection with damage to ATTRACTION PROPERTY as follows:

> This Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured during the PERIOD OF LIABILITY directly resulting from physical loss or damage of the type insured to property of the type insured that attracts business to an insured **location** and is within 1 statute mile/1.6 kilometres of the insured **location**.

*Id.* at 63.

48.     The time limits for ATTRACTION PROPERTY, CIVIL OR MILITARY AUTHORITY, and INGRESS/EGRESS coverages are 30 days.  *See id.* at 13–15.

49.     The Time Element section also provides coverage for DELAY IN STARTUP:

> GROSS EARNINGS or GROSS PROFIT and EXTRA EXPENSE are extended to cover the Actual Loss Sustained incurred by the Insured during the PERIOD OF LIABILITY due to the reasonable and necessary delay in startup of business operations directly resulting from physical loss or damage of the type insured to insured property under construction at an insured **location**.

*Id.* at 64.

11

50.     In addition to the above, the Time Element section includes coverage for

INTERRUPTION BY COMMUNICABLE DISEASE:

> If a **location** owned, leased or rented by the Insured has the actual not suspected presence of **communicable disease** and access to such **location** is limited, restricted or prohibited by:
>
>> 1) an order of an authorized governmental agency regulating the actual not suspected presence of **communicable disease**; or
>>
>> 2) a decision of an Officer of the Insured as a result of the actual not suspected presence of **communicable disease**,
>
> this Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured during the PERIOD OF LIABILITY at such **location** with the actual not suspected presence of **communicable disease**.
>
> This Extension will apply when access to such **location** is limited, restricted, or prohibited in excess of 48 hours.

*Id.* at 64–65.

51.     The Policy has a time limit for INTERRUPTION BY COMMUNICABLE

DISEASE coverage of 365 days, and the coverage shares the $1 million sublimit with the

COMMUNICABLE DISEASE RESPONSE coverage provided in the Property Damage section.

*See id.* at 15.

52.     The Time Element section's PROTECTION AND PRESERVATION OF

PROPERTY TIME ELEMENT coverage provides:

> This Policy covers the Actual Loss Sustained by the Insured for a period of time not to exceed 48 hours prior to and 48 hours after the Insured first taking reasonable action for the temporary protection and preservation of property insured by this Policy provided such action is necessary to prevent immediately impending insured physical loss or damage to such insured property.

*Id.* at 66.

**III.     Thor's Claim to FM**

53.     Thor gave prompt notice of its claim for its coronavirus losses to FM.  In its

response to that notice, on April 6, 2020, FM's New York claims manager, William Reed,

12

contacted Thor's counsel by phone.  On that call, Thor's counsel stated clearly that Thor's claim would greatly exceed the Policy's $1 million sublimit for the communicable disease coverages.

54.     Nevertheless, in its formal acknowledgment letter, FM stated "We understand this loss is reported for a claim to be submitted under the Policy's ADDITIONAL COVERAGES for COMMUNCABLE DISEASE RESPONSE and INTERRUPTION BY COMMUNICABLE DISEASE."

55.     By focusing solely on the communicable disease coverages in its acknowledgment letter, FM sent a clear message that it was not prepared to consider Thor's significant costs and losses under any of the Policy's other coverages, despite those losses being covered under those coverages.

56.     Thor's losses are covered under the other coverages and are not excluded by the Contamination Exclusion because the Contamination Exclusion only excludes costs due to **contamination**, not losses such as Time Element losses, and the Contamination Exclusion cannot apply to anything defined as **communicable disease** because, as neither the Contamination Exclusion nor the communicable disease coverages reference each other, if the Contamination Exclusion applies to **communicable disease** the communicable disease coverages are illusory.  Moreover, the Contamination Exclusion only applies to costs incurred as a direct result of **contamination**, not costs incurred as a result of other causes.

57.     On April 24, Thor responded to FM's acknowledgment letter to reiterate that its claim for coverage was made under all potentially applicable coverages in the Policy and to confirm to FM that Thor would respond to all reasonable requests for information and provide a proof of loss as required by the Policy.

58.     The coronavirus outbreak has caused physical loss or damage to Thor's properties or other properties that have caused losses to Thor covered under the Policy.  The bases for coverage include, but are not limited to, the following: Costs and loss due to the actual not suspected presence of **communicable disease** are covered under the Policy's communicable disease coverages.  Additionally, Thor's losses that are not due to the actual not suspected presence of **communicable disease** trigger coverage under many of the Policy's other coverages. The Time Element section of the Policy provides coverage for Thor's loss of rental income from occupied and unoccupied properties.  To the extent that the state or local executive orders of the type described above affecting Thor's properties constitute orders of civil authority restricting access to Thor's properties due to physical loss or damage, Thor is entitled to civil authority and/or ingress/egress coverage.  To the extent that Thor has incurred costs or suffered losses due to coronavirus loss or damage at properties of its customers or suppliers, those losses are covered as extra expense, contingent time element losses, and/or expediting expenses.  Costs or losses incurred due to inability to complete construction projects are covered under the delay in startup coverage.

59.     Thor has paid all required premiums and has otherwise complied with all terms and conditions of the Policy.

60.     With FM's unmistakable position that it will not provide the full extent of coverage required for coronavirus losses, Thor turns to this Court to make clear to FM the full extent of its coverage obligations under the Policy.

## FIRST CAUSE OF ACTION

(Anticipatory Breach of Contract)

61.     Plaintiff repeats and realleges the allegations set forth in the foregoing paragraphs of this Complaint as if fully set forth herein.

14

62.     The Policy constitutes a valid and enforceable contract between Thor and FM because Thor and its subsidiaries are named insureds under the Policy.

63.     Thor provided prompt notice of its coronavirus losses, performed all obligations required of it under the Policy, and/or was ready willing and able to perform its obligations under the Policy at the time FM stated only that it was considering Thor's claim under the communicable disease coverages of the Policy.

64.     FM's statement that it was considering Thor's claim under the communicable disease coverages of the Policy in response to Thor's notice of loss, which stated that Thor was making a claim for coverage under multiple coverages, specifically including coverages other than the communicable disease coverages, was a positive and unequivocal expression that FM would not perform its obligations to provide coverage outside of the communicable disease coverages.

65.     Under the terms of the Policy, FM must pay up to $750,000,000 for any loss covered under the Policy, subject only to sublimits or waiting periods for specific coverages.

66.     As described above, Thor has sustained, and is continuing to sustain, losses covered under the Policy.

67.     FM has not paid any amounts to Thor in connection with its claim, and Thor has a reasonable belief that FM will not pay the full amount it is required to pay under the Policy for Thor's coronavirus losses.

68.     As a direct and proximate result of FM's anticipated breach of contract, Thor will suffer damages in an amount to be determined at trial, plus consequential damages, attorneys' fees, and pre- and post-judgment interest to the extent permitted by law.

## SECOND CAUSE OF ACTION

(Declaratory Judgment)

69.     Plaintiff repeats and realleges the allegations set forth in the foregoing paragraphs of this Complaint as if fully set forth herein.

70.     Pursuant to the terms of the Policy, FM is obligated to pay, up to the limit of liability or any applicable sublimit or time period, for property damage or time element losses covered under the Policy and not otherwise excluded from coverage.

71.     As detailed above, Thor's costs and losses caused by the coronavirus outbreak are covered under multiple coverages of the Policy and are not excluded.

72.     FM disputes, and/or Thor reasonably believes it will dispute, its legal obligation to pay Thor's claim.

73.     Pursuant to 28 U.S.C. § 2201, Thor is entitled to a declaration by this Court of FM's obligations under its Policy.

74.     An actionable and justiciable controversy exists or will exist between Thor and FM concerning the proper construction of the Policy, and the rights and obligations of the parties thereto, with respect to Thor's claim for costs or losses arising out of the coronavirus outbreak.

75.     Pursuant to 28 U.S.C. § 2201, this Court should enter a declaratory judgment in favor of Thor and against FM, declaring that there is coverage available for Thor's claim up to the full limits or applicable sublimits of the Policy, and, pursuant to 28 U.S.C. § 2202, any other relief this Court deems proper.  Such a declaration would resolve the current controversy between Thor and FM.

## PRAYER FOR RELIEF

WHEREFORE, Thor prays for relief as follows:

16

(a)      On the First Cause of Action, Thor requests that the Court enter judgment against FM, awarding Thor damages in an amount to be determined at trial, but not less than $75,000, plus consequential damages, attorneys' fees, and pre- and post-judgment interest to the extent permitted by law;

(b)      On the Second Cause of Action, Thor requests that the Court enter a declaratory judgment in favor of Thor against FM, declaring that FM is required to pay Thor, up to the applicable limits of the Policy, for claimed amounts under the Policy; and

(c)      Additionally, Thor requests such other and further relief as the Court deems just and proper.

## JURY DEMAND

Thor hereby demands a trial by jury on all issues so triable.

Dated: New York, New York
     April 30, 2020

MCKOOL SMITH, P.C.

/s/ Robin L. Cohen
Robin L. Cohen
Kenneth H. Frenchman
Alexander M. Sugzda
One Manhattan West
395 9th Avenue, 50th Floor
New York, New York 10001
Tel: (212) 402-9400
Fax: (212) 402-9444
rcohen@mckoolsmith.com
kfrenchman@mckoolsmith.com
asugzda@mckoolsmith.com

*Attorneys for Plaintiff Thor Equities, LLC*