**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

THOR EQUITIES, LLC,                         :

                                  :

                Plaintiff,             :       Case No. 20-cv-3380 (AT)

                                  :

                -against-             :

                                  :

FACTORY MUTUAL INSURANCE COMPANY,  :

                                  :

                Defendant.         :

                                  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**DEFENDANT FACTORY MUTUAL INSURANCE COMPANY'S REPLY**
**MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS CROSS-MOTION FOR**
**<u>PARTIAL JUDGMENT ON THE PLEADINGS</u>**

Harvey Kurzweil
Kelly A. Librera
George E. Mastoris
Matthew A. Stark
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
Tel.: (212) 294-6700
HKurzweil@winston.com
KLibrera@winston.com
GMastoris@winston.com
MStark@winston.com

Robert F. Cossolini
FINAZZO COSSOLINI O'LEARY
MEOLA & HAGER, LLC
67 East Park Place, Suite 901
Morristown, NJ 07960
Tel.: (973) 343-4960
robert.cossolini@finazzolaw.com

*Attorneys for Defendant Factory Mutual*
*Insurance Company*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT .......................................................................................... 1

ARGUMENT ....................................................................................................................... 3

I.     THE POLICY PROVIDES FOR COVERAGES, EXCLUSIONS, AND
EXCEPTIONS TO EXCLUSIONS .......................................................................... 3

II.    THE CONTAMINATION EXCLUSION SPECIFICALLY EXCLUDES "THE
INABILITY TO USE OR OCCUPY PROPERTY" FOR WHICH THOR SEEKS
TO RECOVER, AND SEPARATELY EXCLUDES FROM COVERAGE
"CONTAMINATION" AS A FREE-STANDING TERM ................................................. 4

III.   GIVEN ITS ORDINARY MEANING, THE LOSS OF USE EXCLUSION ALSO
CLEARLY APPLIES AS A SEPARATE BAR TO THOR'S CLAIM ............................ 9

IV.   THE COMMUNICABLE DISEASE COVERAGES ARE POTENTIALLY-
APPLICABLE NARROW EXCEPTIONS TO THE COVID-19-RELATED
EXCLUSIONS ........................................................................................................ 12

CONCLUSION .................................................................................................................. 15

i

## TABLE OF AUTHORITIES

**Cases**                                                                                   **Page(s)**

*1070 Park Ave. Corp. v. Fireman's Fund Ins. Co.*,
    313 F. Supp. 3d 528 (S.D.N.Y. 2018)........................................................................5

*Am. Motorists Ins. Co. v. Trane Co.*,
    544 F. Supp. 669 (W.D. Wis. 1982), *aff'd*, 718 F.2d 842 (7th Cir. 1983)................................6

*American Motorists Insurance Co. v. Trane Co.*,
    718 F.2d 842 (7th Cir. 1983) ...........................................................................6

*Champion Int'l Corp. v. Cont'l Cas. Co.*,
    400 F. Supp. 978 (S.D.N.Y. 1975) ......................................................................9

*Daniel v. Am. Bd. of Emergency Med.*,
    428 F.3d 408 (2d Cir. 2005)...........................................................................12

*Diesel Barbershop, LLC v. State Farm Lloyds*,
    No. 20-cv-00461, 2020 WL 4724305 (W.D. Tex. Aug. 13, 2020)...........................................8

*Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*,
    279 F. Supp. 2d 235 (S.D.N.Y. 2003), *aff'd as modified*, 411 F.3d 384 (2d Cir.
    2005) ...............................................................................................11

*Frank v. Reassure Life Ins. Co.*,
    No. 12-cv-2253, 2012 WL 5465027 (S.D.N.Y. Nov. 9, 2012)..............................................6

*Franklin EWC, Inc. v. Hartford Fin. Serv. Grp., Inc.*,
    No. 20-cv-04434, 2020 WL 5642483 (N.D. Cal. Sept. 22, 2020).......................................7, 8

*Hudson Shore Assocs., L.P. v. Praetorian Ins. Co.*,
    99 N.Y.S.3d 440 (N.Y. App. Div. 2019) ................................................................7

*Levy v. Nat'l Union Fire Ins. Co.*,
    889 F.2d 433 (2d Cir. 1989)..........................................................................11

*Mark's Engine Co. No. 28 Rest., LLC v. Travelers Indem. Co.*,
    No. 20-cv-04423, 2020 WL 5938689 (C.D. Cal. Oct. 2, 2020) ...........................................8

*Martinez v. Allied Ins. Co. of Am.*,
    No. 20-cv-00401, 2020 WL 5240218 (M.D. Fla. Sept. 2, 2020)........................................8, 9

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
    514 U.S. 52 (1995)...........................................................................9, 11, 14

*Ormond Country Club v. James River Ins. Co.*,
    No. 06-cv-11376, 2008 WL 859482 (E.D. La. Mar. 27, 2008) .......................................12, 13

*Rapid Park Indus. v. Great N. Ins. Co.*,
   No. 09-cv-8292, 2010 WL 4456856 (S.D.N.Y. Oct. 15, 2010)................................................7

*Sadler v. Pac. Indem. Co.*,
   No 08-cv-0670, 2009 WL 9081692 (D.N.M. Mar. 24, 2009) ...................................................10

*Sullivan v. Everett Cash Mut. Ins. Co.*,
   No. 18-cv-00207, 2019 WL 3808465 (N.D. Ga. Apr. 17, 2019)..............................................10

*Travelers Prop. Cas. Co. of Am. v. Mixt Greens, Inc.*,
   No. 13-cv-0957, 2014 WL 1246686 (N.D. Cal. Mar. 25, 2014) ..............................................10

*In re Tribune Co. Fraudulent Conveyance Litig.*,
   No. 12-cv-2652, 2019 WL 1771786 (S.D.N.Y. Apr. 23, 2019) ...............................................11

*Two Guys from Harrison-N.Y., Inc. v. S.F.R. Realty Assocs.*,
   472 N.E.2d 315 (N.Y. 1984)....................................................................................................11

*Wilson v. Hartford Cas. Co.*,
   No. 20-cv-03384, 2020 WL 5820800 (E.D. Pa. Sept. 30, 2020)...............................................8

**Other Authorities**

2 COUCH ON INS. § 21:19 ...............................................................................................................14

Merriam-Webster's Collegiate Dictionary .....................................................................................5

**PRELIMINARY STATEMENT**

The parties' dispute is straightforward:  Thor[1] claims that it is "guarantee[d] coverage" for its losses due to the novel coronavirus pandemic, Pl.'s Consolidated Reply at 1 ("Reply") (ECF No. 45); FM Global asserts that the majority of such losses are explicitly precluded by the Policy's Contamination and Loss of Use Exclusions.

In particular, Thor argues that it is entitled to coverage for alleged losses—which it "expect[s] to continue for the indefinite future"—stemming from (i) "orders issued by civil authorities restricting access to its properties;" (ii) "loss and damage to its properties and neighboring business properties; (iii) "delay in startup to its properties under construction;" and (iv) "loss caused by the actual not suspected presence of communicable disease at its properties." Pl.'s Mem. of Law in Supp. of its Mot. at 11 ("Mot.") (ECF No. 34); Reply at 1.

But the Policy is clear that it "*excludes . . . contamination, and any cost due to contamination including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy.*" Compl. Ex. A at 24[2] ("Policy") (ECF No. 1-1) (emphasis added). The parties agree that the actual or suspected presence of the coronavirus is "contamination," as that term is defined in the Policy. *See id.* at 76; Mot. at 17.  Similarly, the Policy excludes "loss of use," Policy at 21, which also encompasses the types of losses Thor is claiming.  Although the "Communicable Disease Response" and "Interruption by Communicable Disease" coverages are narrow exceptions to these exclusions, and available to Thor in an amount of up to $1 million, Thor dismisses them as insufficient and inapplicable to most or all of its losses. *See* Reply at 2 n.2.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in FM Global's Cross-Motion (ECF No. 44).

[2] Citations to the Policy are to the file-stamped ECF page numbers on ECF No. 1-1.

To support its effort to secure more than twenty times the amount of coverage actually available under the Policy, Thor makes four arguments. Each of them relies on reading words into or out of the Policy, and none is persuasive. *First*, Thor argues that simply because the word "loss" does not appear in the Contamination Exclusion, Thor's claim for coverage due to its "inability to use or occupy property" somehow bypasses the exclusion. Reply at 3, 7-10. This is a distortion of the Policy's clear language that "This Policy excludes . . . contamination, and any cost due to contamination ***including the inability to use or occupy property***." Policy at 24 (emphasis added). Nor can Thor cite a single case in support of its misguided interpretation.

*Second*, Thor contends that it is "not seeking coverage for the condition of its properties due to the actual or suspected presence of coronavirus," but instead for harm stemming from stay-at-home orders, and therefore the Contamination Exclusion does not apply. Reply at 10-12. Thor's Complaint says otherwise. Thor alleges that: (i) "[t]he coronavirus outbreak has caused physical loss or damage to Thor's properties or other properties that have caused losses to Thor covered under the Policy," and (ii) "Thor has had confirmed cases of COVID-19 at multiple properties and has had to take action to secure and preserve those properties, and as of the filing of this Complaint it has estimated that it will lose in excess of $20 million in rental income alone." Compl. ¶¶ 19, 58 (ECF No. 1). And, there is no dispute that the stay-at-home orders were prompted by the coronavirus.

*Third*, Thor argues that the "loss of use" exclusion does not mean "loss of use" but instead means "loss resulting from economic changes—reduction in the value or use of property due to shifts in competition, for example, or shifts in demand." Reply at 2. Although Thor might prefer to reimagine the clause that way, those are not the words that appear in the Policy and there is no caselaw supporting so strained a definition of "loss of use."

2

*Lastly*, Thor attempts to manufacture a conflict between the Contamination Exclusion and the Communicable Disease coverages. *See* Reply at 12-15. As explained in FM Global's Cross-Motion, these provisions are complementary, and the Communicable Disease coverages are narrow exceptions to the broad Contamination Exclusion. Corrected Combined Mem. of Law in Opp'n to Pl.'s Mot. and in Supp. of Def.'s Cross-Motion at 19-20 ("Cross-Motion") (ECF No. 44).

At bottom, Thor's suggestion that the Policy was "designed" to provide coverage for an unprecedented global pandemic strains credulity and any reasonable reading of the Policy. The Policy *expressly excludes* coverage for "contamination" and the "loss of use" that Thor has allegedly experienced, and that it "expect[s] to continue for the indefinite future." *See id.* at 2-3 (quoting Mot. at 11). Thus, the only claims that should remain in the case are those claims, if any, that Thor has under the Policy's Communicable Disease coverages.

## ARGUMENT

### I.   THE POLICY PROVIDES FOR COVERAGES, EXCLUSIONS, AND EXCEPTIONS TO EXCLUSIONS

The parties agree that the Policy details various property and business interruption coverages, and that those coverages are subject to specified exclusions. Policy at 10 ("This Policy covers property, as described in this Policy, against ALL RISKS OF PHYSICAL LOSS OR DAMAGE, *except as hereinafter excluded*") (bold and italics added); Mot. at 5. The exclusions, in turn, apply unless "otherwise stated" elsewhere in the Policy. Policy at 20.

FM Global contends that, as a matter of law, Thor cannot demonstrate the "physical loss or damage" necessary for the coverage Thor seeks because, among other things, Thor's inability to access or fully utilize its properties cannot constitute physical loss or damage regardless of whether the coronavirus is actually present at an insured location. But that issue is not currently

before the Court.  What is before the Court is whether the Contamination or Loss of Use

Exclusions apply to bar Thor's claim.  The answer to those questions is yes.

As outlined in FM Global's Cross-Motion, while these exclusions appear under Section 3

of the Property Damage section of the Policy, both apply to the entire Policy.  *See* Cross-Motion

at 5-6 (quoting Policy at 45, 55). Pursuant to the Policy's clear structure, and as mentioned above,

these exclusions "apply unless otherwise stated."  Policy at 20.  Where, as here, a particular

coverage is carved out as an exception to applicable exclusions, that coverage may apply.  The

Policy's Communicable Disease coverages, which require the "actual not suspected presence of

communicable disease," but do not require physical loss or damage, are two such potentially-

applicable exceptions to the Contamination and Loss of Use Exclusions.  If applicable, they would

provide Thor with up to $1 million in coverage.[3]

**II.      THE CONTAMINATION EXCLUSION SPECIFICALLY EXCLUDES "THE INABILITY TO USE OR OCCUPY PROPERTY" FOR WHICH THOR SEEKS TO RECOVER, AND SEPARATELY EXCLUDES FROM COVERAGE "CONTAMINATION" AS A FREE-STANDING TERM**

Thor argues that because the word "loss" does not appear in the Contamination Exclusion,

it does not apply to tens of millions of dollars in alleged business interruption coverage stemming

from Thor's "inability to use or occupy property" due to contamination (here, the novel

coronavirus).  Thor's interpretation finds no support in the language or logic of the Policy.

As laid out above, the Policy excludes "*contamination, <u>and</u> any cost due to contamination*

**including** *the inability to use or occupy property or any cost of making property safe or suitable*

*for use or occupancy*."  Policy at 24 (emphases altered and added).  Thus, the Policy expressly

---

[3] Despite alleging in its Complaint that it has had "confirmed cases of COVID-19 at multiple properties," Compl. ¶ 19, Thor equivocates now as to whether it seeks Communicable Disease coverage, and even goes so far as to criticize FM Global for offering to pay $1 million dollars to Thor, assuming Thor pursues and can substantiate such a claim. Reply at 2 n.2.

states that the "inability to use or occupy property" is a "cost due to contamination" and excludes it from coverage.  Further, as a matter of grammar, the fact that "inability to use or occupy" is defined as an example of a "cost of contamination" makes clear that "costs" does not mean "out of pocket" expenditures, as Thor asserts (Mot. at 2), but instead is broader.  If the exclusion were limited to out of pocket costs associated with an inability to use or occupy property, it would say "costs of contamination, including any costs incurred as a result of an inability to use or occupy property."  Indeed, the only other example cited in the exclusion is constructed in precisely such a manner ("any cost of making property safe or suitable for use or occupancy").

In light of the exclusion's clear language, the question of whether an "inability to use or occupy property" might elsewhere in the Policy (or some other policy) be characterized as a "loss" is completely beside the point.  If anything, that observation clarifies that the terms "cost" and "loss," which are, after all, economically equivalent, are used interchangeably in the Policy. Accordingly, the Contamination Exclusion makes pellucid that the Policy does not cover Thor's "inability to use or occupy property" due to contamination.

Undeterred, Thor argues, based on "Merriam-Webster's Collegiate Dictionary," that cost does not mean "inability to use or occupy property," as the Policy explicitly says, but instead means "an amount affirmatively 'paid' out."  Reply at 7.  But the parties are bound by the language of the Policy, not modifications to that language based on self-serving definitions unmoored to the Policy.  Indeed, it is a "well-settled proposition that one cannot determine the meaning of words in an insurance policy just by looking them up in a dictionary; instead, one must read the policy as a whole for clues about meaning."  *1070 Park Ave. Corp. v. Fireman's Fund Ins. Co.*, 313 F. Supp. 3d 528, 540 (S.D.N.Y. 2018).

Nor is Thor's "cost" versus "loss" argument supported by the cases it cites.   Thor's description of *American Motorists Insurance Co. v. Trane Co*., 718 F.2d 842 (7th Cir. 1983), is particularly inapt.   Thor claims that the *Trane* court "held that the exclusion in that case only barred coverage for the *costs* that the insured incurred in discovering and remedying its faulty products."   Reply at 9 (emphasis added by Thor).   But Thor's emphasis on the word "costs" in the *Trane* exclusion is just as misplaced as its emphasis on the word "cost" in the Contamination Exclusion here.   The holdings of the district court and Seventh Circuit in *Trane* had *nothing* to do with the question of "costs" versus "losses," as Thor misleadingly suggests.   Rather, they turned on the fact that the exclusion at issue "applied only to costs *associated with discovering and remedying faulty products*," and that Trane's losses (which were caused by shortfalls in production) were not associated with "remedying a defect" in its product.   *Am. Motorists Ins. Co. v. Trane Co.*, 544 F. Supp. 669, 695 (W.D. Wis. 1982), *aff'd*, 718 F.2d 842 (7th Cir. 1983).

Thor's reliance on *7001 East 71st Street* and *Granite Ridge Energy* is similarly misplaced.   Neither had anything to do with a distinction between costs and losses.   Both cases were simply determinations of whether the *event* causing damage was covered under the applicable policies.

Separately, even if the exclusion did not specifically reference Thor's "inability to use or occupy [its] property," (and it does), it still excludes "contamination" as a free-standing term, which appears **before** any mention of "cost" and must be given meaning in its own right.   *See* Policy at 24 ("This Policy excludes . . . **contamination**, and any cost due to contamination . . . .") (emphasis in original); *Frank v. Reassure Life Ins. Co*., No. 12-cv-2253, 2012 WL 5465027, at *5 (S.D.N.Y. Nov. 9, 2012) ("courts will not interpret any term of an insurance policy so as to render it superfluous").

New York courts routinely interpret peril exclusions, such as this one, to bar claims for the harm stemming from that risk. *See, e.g.*, *Hudson Shore Assocs., L.P. v. Praetorian Ins. Co.*, 99 N.Y.S.3d 440, 441 (N.Y. App. Div. 2019) (provision providing that "flood is excluded in SFH Zones as defined by the Federal Emergency Management Agency" barred all flood-related damage); *Rapid Park Indus. v. Great N. Ins. Co.*, No. 09-cv-8292, 2010 WL 4456856, at *4 (S.D.N.Y. Oct. 15, 2010) (exclusions for "Planning, Design, Materials or Maintenance," "Settling," "Wear and Tear," and "Acts and Decisions" barred coverage for faulty workmanship, inadequate maintenance, defective design, cracking, settling, and wear and tear).

Thor's rejoinder on this point—that it "is not seeking coverage for the condition of its properties due to the actual or suspected presence of coronavirus," but rather for "losses resulting from government shut-down orders issued in response to the COVID-19 pandemic"—is unsupported by the Complaint, contrary to caselaw, and self-defeating. Reply at 10; *see, e.g.*, *Franklin EWC, Inc. v. Hartford Fin. Serv. Grp., Inc.*, No. 20-cv-04434, 2020 WL 5642483, at *2 (N.D. Cal. Sept. 22, 2020) (referring to plaintiffs' theory that "the loss is created by the Closure Orders rather than the virus, and therefore the Virus Exclusion does not apply" as "[n]onsense" because the Closure Orders "were issued as the direct result of COVID-19"). Thor's Complaint alleges that: (i) "the coronavirus outbreak has caused physical loss or damage to Thor's properties or other properties that have caused losses to Thor covered under the Policy," and (ii) "Thor has had confirmed cases of COVID-19 at multiple properties and has had to take action to secure and preserve those properties, and as of the filing of this Complaint it has estimated that it will lose in excess of $20 million in rental income alone." Compl. ¶¶ 19, 58. And, as Thor explains, the pandemic was the reason for the government shut-down orders in the first place. Therefore, Thor's

claims directly stem from the unusable "condition of [its] propert[ies]" as a result of the actual or potential presence of a virus—the very definition of "contamination." *See* Policy at 76.

As the court held in *Diesel Barbershop, LLC v. State Farm Lloyds*, when presented with a similar argument to the one advanced by Thor:

> Guided by the plain language of the Policies, the Court finds that Plaintiffs have pleaded that COVID-19 is in fact the reason for the Orders being issued and the underlying cause of Plaintiffs' alleged losses. While the Orders technically forced the Properties to close to protect public health, the Orders only came about sequentially as a result of the COVID-19 virus spreading rapidly throughout the community. Thus, it was the presence of COVID-19 . . . that was the primary root cause of Plaintiffs' businesses temporarily closing.

No. 20-cv-0461, 2020 WL 4724305, at *6 (W.D. Tex. Aug. 13, 2020) (granting motion to dismiss).

Not surprisingly, as FM Global noted in its Cross-Motion, courts across the country confronted with claims for business interruption insurance coverage have held that contamination exclusions similar to the one here preclude recovery of losses related to the pandemic. *See* Cross-Motion at 13-14 (discussing *Martinez v. Allied Ins. Co. of Am.*, No. 20-cv-00401, 2020 WL 5240218 (M.D. Fla. Sept. 2, 2020) and *Diesel Barbershop*, 2020 WL 4724305). Since then, the trend has only grown. *See, e.g.*, *Mark's Engine Co. No. 28 Rest., LLC v. Travelers Indem. Co.*, No. 20-cv-04423, 2020 WL 5938689, at *3, 5 (C.D. Cal. Oct. 2, 2020) (granting insurer's motion to dismiss because "losses from inability to use property do not amount to 'direct physical loss of or damage to property'" and even if it did, "coverage would be precluded under the virus [exclusion] provision"); *Wilson v. Hartford Cas. Co.*, No. 20-cv-03384, 2020 WL 5820800, at *7 (E.D. Pa. Sept. 30, 2020) (granting insurer's motion to dismiss based on the policy's "virus exclusion," which was "conspicuously displayed, clear, and unambiguous"); *Franklin EWC, Inc.*, 2020 WL 5642483, at *1 (granting insurer's motion to dismiss because "the policy's virus exclusion bars coverage of Plaintiffs' financial losses").

8

With respect to the cases FM Global cited in its Cross-Motion—*Martinez* and *Diesel*—Thor argues that those policies are not instructive because they "expressly encompassed 'loss' resulting directly or indirectly from a virus." Reply at 12. But, if anything, the Policy here goes ***further*** than those policies, as well as the policies at issue in the other cases cited above. None of those policies specifically refer to the exclusion of "contamination" as a free-standing term, and none specifically excludes the "inability to use or occupy property," which is precisely what all of these cases—and especially this one—are about. Although the policies in those cases were *less* explicit than the Policy here, the courts which considered them all nevertheless held that the relevant contamination exclusions barred plaintiffs' claims.

### III.   GIVEN ITS ORDINARY MEANING, THE LOSS OF USE EXCLUSION ALSO CLEARLY APPLIES AS A SEPARATE BAR TO THOR'S CLAIM

As with the contamination exclusion, the Policy's exclusions for "loss of market *or* loss of use" also preclude Thor's claims. Policy at 20-21 (emphasis added). Thor has repeatedly conceded that its losses stem from its inability to use its properties due to COVID-19-related governmental orders. *See, e.g.*, Thor Pre-Motion Letter at 3 (ECF No. 26); Mot. at 1, 10-11, 21. The unambiguous language of the exclusion is thus dispositive.

In response, Thor first attempts to minimize the import of the exclusion by calling it "perfunctory" and repeatedly pointing out that it "consists in its entirety of seven words." Reply at 1, 3, 5, 6, 16. Pithy as Thor's argument might be, the clause is a bargained-for provision within the Policy that must be given full effect. *See, e.g.*, *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995) ("[A] document should be read to give effect to all its provisions."). In insurance policies, as in most places, brevity is a virtue: the clause makes absolutely clear that all claims for loss of market or loss of use are excluded. *See, e.g.*, *Champion Int'l Corp. v. Cont'l Cas. Co.*, 400 F. Supp. 978, 981 (S.D.N.Y. 1975) (observing that insurers can "avoid the risk of

ambiguity if they use short and precise words and short and simple sentences"). It need say nothing more.

Thor next contends that the phrase "loss of use" does not really mean what it says, but something completely different. To illustrate the point, Thor trots out a number of alternative formulations, such as an "obsolescence or any other change in economic conditions that reduces demand for, and thus the value of [] property." Reply at 16.[4] All of these interpretations have three things in common: they are long, they are complicated, and they have nothing to do with "loss of use," which is a standard phrase that appears regularly in insurance policies and whose plain meaning is well-settled. *See, e.g.*, *Travelers Prop. Cas. Co. of Am. v. Mixt Greens, Inc.*, No. 13-cv-0957, 2014 WL 1246686, at *5 (N.D. Cal. Mar. 25, 2014) ("Under the plain meaning of 'loss of use,' the insured must have been deprived of the use of its tangible property."); *Sullivan v. Everett Cash Mut. Ins. Co.*, No. 18-cv-00207, 2019 WL 3808465, at *8 (N.D. Ga. Apr. 17, 2019) ("[T]he phrase 'loss of use' unambiguously does not include a mere decrease in value."); *Sadler v. Pac. Indem. Co.*, No 08-cv-0670, 2009 WL 9081692, at *5 (D.N.M. Mar. 24, 2009) ("'[L]oss of use' of tangible property requires physical damage or destruction.").

Nevertheless, Thor advocates for these alternative formulations on the grounds that because "loss of use" appears in the same policy "subdivision" as "loss of market," this Court should ignore its plain meaning and instead read the two phrases together as "potential alternative manifestations of a common cause." Reply at 16. However, nothing in the exclusion or the remainder of the Policy says anything about what that "common cause" might be. The possibilities that Thor suggests, such as a "lack of a commercial market," "shifts in competition," and "changing

---

[4] Other variants include "loss resulting from economic changes—reduction in the value or use of property due to shifts in competition, for example, or shifts in demand," and "losses suffered . . . because there is no longer a business market or use for [] property." Reply at 2; Mot. at 21.

economic conditions" (Mot. at 3; Reply at 2, 6) are really just other ways of saying "loss in market" and ignoring the "loss of use" language altogether. As this Court explained (and the Second Circuit affirmed), "[t]he loss of market exclusion relates to losses resulting from economic changes occasioned by, *e.g.,* competition, shifts in demand, or the like; it does not bar recovery for loss of ordinary business caused by a physical destruction or other covered peril." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 279 F. Supp. 2d 235, 240 (S.D.N.Y. 2003), *aff'd as modified*, 411 F.3d 384 (2d Cir. 2005). In other words, Thor's proffered interpretation of the exclusion simply reads the words "loss of use" out of the Policy, which violates the "cardinal principle of contract construction[] that a document should be read to give effect to all its provisions." *Mastrobuono*, 514 U.S. at 63; *see also Two Guys from Harrison-N.Y., Inc. v. S.F.R. Realty Assocs.*, 472 N.E.2d 315, 318 (N.Y. 1984) ("In construing a contract, one of a court's goals is to avoid an interpretation that would leave contractual clauses meaningless.").

Thor also invokes the hoary doctrine of *noscitur a sociis*. But that canon of construction has no application here. For one thing, it may only be used where a word or phrase included in a list of items is ambiguous or unclear; as discussed above, the words "loss of use" are anything but. *See Levy v. Nat'l Union Fire Ins. Co.*, 889 F.2d 433, 434 (2d Cir. 1989) ("[When] the pertinent provisions [of an insurance policy] contain no ambiguity, canons of construction favoring the insured are irrelevant."). Indeed, Thor itself is adamant that the exclusion is unambiguous, and it should be taken at its word. Reply at 17 n.10. For another, and as FM Global explained in its Cross-Motion, *noscitur a sociis* simply does not apply where, as here, the clause being interpreted consists of two items connected by a disjunctive "or." Cross-Motion at 22-23; *see also In re Tribune Co. Fraudulent Conveyance Litig.*, No. 12-cv-2652, 2019 WL 1771786, at *10 n.10 (S.D.N.Y. Apr. 23, 2019). Thor, which makes no attempt to distinguish *Tribune*, has no real

11

answer to this point.   And the solitary case Thor cites for its position—*Ashland Hospital*—involved two phrases connected by a semicolon, which (as punctuation used to set off *related* terms) is far better suited to application of the doctrine.   Cross-Motion at 24; *see also Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 425 n.15 (2d Cir. 2005) (noting that a semicolon suggests a "close relationship between the two statements").

Finally, in a last ditch effort to salvage its claims, Thor asserts that the "loss of use" exclusion "eviscerate[s] the Policy's Time Element Coverages."   Reply at 18.   That position is not only reductionist, but also flat wrong.   First, courts are entirely capable of differentiating between a *covered* loss of use and an *excluded* one.   *See, e.g.*, *Ormond Country Club v. James River Ins. Co.*, No. 06-cv-11376, 2008 WL 859482, at *3 n.4 (E.D. La. Mar. 27, 2008) (distinguishing between the *covered* "loss of use of the [insured's] club house" and the *excluded* "loss of use of the golf course").   Here, for example, the prefatory language to the Policy's Time Element coverages makes clear that Time Element loss "is subject to the Policy provisions, including *applicable exclusions*."   Policy at 45 (emphasis added).   Accordingly, there is no boundless Time Element coverage to "eviscerate."

IV.   **THE COMMUNICABLE DISEASE COVERAGES ARE POTENTIALLY-APPLICABLE NARROW EXCEPTIONS TO THE COVID-19-RELATED EXCLUSIONS**

The Policy defines "communicable disease," in relevant part, as "disease which is . . . transmissible from human to human by direct or indirect contact with an affected individual or the individual's discharges."   Policy at 75.   Communicable disease, therefore, is closely related to "contamination," which is defined to include "any . . . pathogen or pathogenic organism, bacteria, virus, disease causing or illness causing agent."   *Id.* at 76.

The Policy provides two narrow coverages specific to communicable disease: (1) "Communicable Disease Response" and (2) "Interruption by Communicable Disease." Both provisions provide coverage if a location "has the actual not suspected presence of communicable disease and access to such location is limited, restricted or prohibited by: 1) an order of an authorized governmental agency regulating the actual not suspected presence of **communicable disease**; or 2) a decision of an Officer of the Insured as a result of the actual not suspected presence of **communicable disease**." *Id.* at 32 & 64-65. If those requirements are met, the Communicable Disease Response covers costs for remediation and public relations services while Interruption by Communicable Disease covers other losses and expenses. *Id*. at 32, 65.

The parties agree that, per their plain terms, these coverages apply in "narrow and limited circumstances." Mot. at 3; Reply at 2 n.2. Although these coverages do not require physical loss or damage, they are ***only*** triggered upon "the actual not suspected" presence of communicable disease along with the requisite "order of an authorized government agency" or "a decision of an Officer of the Insured" relating to the "actual not suspected" presence of communicable disease. Because the Communicable Disease coverages specifically relate to the "virus" and "disease causing or illness causing agent" carve-outs in the general Contamination Exclusion, these coverages act as an exception to that exclusion in the "narrow and limited circumstances" in which they are triggered. *See* Cross-Motion at 19-20.

Thor initially complained that reading the Policy as FM Global suggests would create a "conflict" in which the Contamination Exclusion would "swallow . . . the communicable disease coverage provisions." Mot. at 19-20. But, as FM Global explained in its Cross-Motion, far from being in "conflict," these provisions are complementary—with the coverages serving as limited exceptions to the exclusion—and there is no risk that reading the Contamination Exclusion by its

plain terms would "swallow" the Communicable Disease coverages.  *See* Cross-Motion at 20-21.

On the other hand, Thor's proffered interpretation creates a conflict where none exists.

Specifically, by limiting the broadly-phrased Contamination Exclusion to cover only "costs" and

reading the communicable disease coverages as subject to the Exclusion (instead of as exceptions

to it),[5] the Communicable Disease Response coverage (which covers various specified "costs")

would be swallowed and rendered illusory by the Exclusion, while only the Interruption by

Communicable Disease coverage (which covers specified "loss" and "expense") would survive.

Thor's effort to explain away this conflict is unavailing.  Thor argues that there is no tension

because the Contamination Exclusion does not apply to "costs that only indirectly result from a

virus, such as those covered by the Communicable Disease Response coverage."  Reply at 15.  As

an initial matter, Thor is once again inserting language into the Policy (here, the word "indirectly")

that does not exist.  The Contamination Exclusion expressly encompasses "***any*** cost due to

contamination"; it is not limited to direct costs.  Policy at 24 (emphasis added).  Moreover, even

if Thor were correct, the Communicable Disease Response coverage by its own terms extends to

***direct*** costs, including the costs of "cleanup, removal and disposal of the actual not suspected

presence of communicable diseases from insured property."  *Id.* at 32.  Under Thor's proposed

reading, this coverage would be subject to the Contamination Exclusion and would therefore be

rendered a nullity.  This result is not tenable under basic principles of insurance contract

interpretation, which require that all provisions be given effect.  *Mastrobuono*, 514 U.S. at 63; *see*

*also* 2 COUCH ON INS. § 21:19 (Policy's "words, parts, and provisions must be construed together").

---

[5] Thor suggests that, for the Policy to provide an exception to an exclusion, the exception must
be specifically mentioned within the same clause as the exclusion itself.  There is nothing in the
Policy supporting that interpretation, and the structure of the Policy as a whole fatally
undermines that argument.

Rather than address this dispositive point, Thor suggests for the first time that reading the communicable disease coverages as exceptions to the Contamination Exclusion "ironically" leads "to the conclusion that . . . the other coverage provisions are not foreclosed."  Reply at 2 n.2. Essentially, Thor is now arguing that if the communicable disease coverages are exceptions, so too are all of the other coverages in the Policy.  Thor has essentially inverted its initial argument: instead of warning that reading the Policy as FM Global suggests would allow the Contamination Exclusion to swallow the communicable disease coverages, it now argues that all of the Policy coverages would swallow the Contamination Exclusion.

Thor's argument misses the mark in two ways.  First, these specific coverages only apply as exceptions because, as discussed above, they concern communicable disease and therefore relate *directly* to contamination (and therefore to the Contamination Exclusion).  None of the other coverages similarly overlap with the Contamination Exclusion such that they create an exception. Second, as Thor acknowledges, there are "additional [] requirements to trigger those *narrow* provisions."  *Id.* (emphasis added).  The coverages require the "actual not suspected presence of communicable disease" and an "order of an authorized government agency" or "decision of an Officer of the Insured" relating to the "actual not suspected" presence of communicable disease.

## CONCLUSION

Defendant FM Global respectfully requests that this Court dismiss Thor's claims as a matter of law except those claims Thor may assert to the Communicable Disease Response or Interruption by Communicable Disease coverages.

Dated:  October 12, 2020                                        Respectfully submitted,

                                                                            WINSTON & STRAWN LLP

                                                                            /s/ *Harvey Kurzweil*
                                                                            Harvey Kurzweil

15

Kelly A. Librera
George E. Mastoris
Matthew A. Stark
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
Tel.: (212) 294-6700
Fax: (212) 294-4700
HKurzweil@winston.com
KLibrera@winston.com
GMastoris@winston.com
MStark@winston.com

Robert F. Cossolini
FINAZZO COSSOLINI O'LEARY
MEOLA & HAGER, LLC
67 East Park Place, Suite 901
Morristown, NJ 07960
Tel.: (973) 343-4960
robert.cossolini@finazzolaw.com

*Attorneys for Defendant Factory Mutual*
*Insurance Company*