# EXHIBIT A

MORGAN, LEWIS & BOCKIUS LLP
Nicholas Schretzman, Bar No. 4753067
nicholas.schretzman@morganlewis.com
101 Park Ave.
New York, NY 10178-0060
Tel:    +1.212.309.6000
Fax:   +1.212.309.6001

Attorneys for *Amicus Curiae*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| THOR EQUITIES, LLC, <br><br> Plaintiff, <br><br> v. <br><br> FACTORY MUTUAL INSURANCE COMPANY, <br><br> Defendant. | Civil Action No.: 20 Civ. 03380 (AT) <br><br> **ITT's *AMICUS CURIAE* BRIEF** |

---

**I.    INTRODUCTION**

Factory Mutual Insurance Company ("FM"), and its affiliates, issued all-risk commercial property insurance policies throughout the United States. The FM policies are intentionally broad in scope. They cover "all risks of physical loss or damage" to property, unless otherwise excluded, at the insured's locations described in the policies.

ITT purchased an all-risk commercial property insurance policy from FM's affiliate, FM Global, for the October 31, 2019 to October 31, 2020 period. ITT's policy is substantially similar to the FM policy issued to Thor Equities, LLC ("Thor"). ITT's policy covers the company for "all risks of physical loss or damage" to property unless otherwise excluded. It provides the same

"additional" coverages as Thor's policy. It provides the same "Time Element" coverages as Thor's policy. It utilizes substantially the same policy forms as Thor's policy. FM Global denied ITT's claim for COVID-19 business income losses and extra expenses – except with respect to the communicable disease response coverage part – for essentially the same reasons FM denied Thor's claim. The basic insuring agreement in Thor's FM policy (the "Policy") appears under a heading entitled "Property Damage." (ECF 1-1 at 19). This "Property Damage" component of the Policy contains several components, including descriptions of the insured real and personal property, and the excluded real and personal property. (*Id*. at 19-20). It identifies various exclusions to coverage. (*Id*. at 20-24). It then identifies a number of "Additional Coverages for insured physical loss or damage" it provides to Thor. (*Id*. at 26-44).

One of the "Other Additional Coverages" for Property Damage in the Policy is "Communicable Disease Response." (*Id*. at 32). Here, the Policy requires FM to pay "the reasonable and necessary" clean-up, removal, disposal, public relations and reputation management costs incurred by Thor at any covered location "with the actual not suspected presence of communicable disease." (*Id*.). The Policy defines "communicable disease" as "disease which is . . . transmissible from human to human by direct or indirect contact with an affected individual or the individual's discharges. . . ." (*Id*. at 75).

Consequently, the Policy considers the actual presence of "communicable disease" at property *to be property damage*. This is only natural since coverage under the Policy is triggered, in all instances, by "property damage." The Policy would not afford the coverage for the presence of "communicable disease" at property if it did not consider "communicable disease" at property *to be property damage*.

Consequently, the "communicable disease" coverages in the Policy are not "exceptions" to an exclusion, as FM argues. (ECF 44 at 26-27). Instead, the "communicable disease" coverages are among the "Additional" coverages affirmatively provided by the Policy. This means that "communicable disease" *is* "physical loss or damage of the type insured" under the Policy for purposes of the Policy's various "Time Element" coverages, including civil or military authority coverage, contingent time element extended coverage, attraction property coverage, ingress/egress coverage, rental income coverage, and interruption by communicable disease coverage. (*Id*. at 45-55; 58-66). "Communicable disease" does not need to alter or materially change the physical characteristics of property for coverage to exist under the Policy. The mere presence of "communicable disease" at property is, itself, "property damage" and "physical loss or damage of the type insured" under the Policy. This triggers the Time Element coverages under the Policy: "This Policy insures TIME ELEMENT loss . . . directly resulting from physical loss or damage of the type insured . . . ." (ECF 1-1 at 45).

The "contamination exclusion" in the Policy does not apply to COVID-19 business income losses and extra expenses for the reasons discussed in Thor's briefs – the "contamination exclusion" only reaches "costs" and not business *losses* – and for an additional reason as well. By its very terms, the contamination exclusion does not reach "communicable disease." The Policy defines "contamination" as "any condition of property due to the actual or suspected presence of any . . . toxin, pathogen, or pathogenic organism, bacteria, virus, disease causing or illness causing agent . . . ." (ECF 1-1 at 76). The term "communicable disease" does not appear in the definition.

Instead, the contamination exclusion focuses on the "agent" that *causes* communicable disease, such as a virus or bacteria, and *not* on the disease itself. A virus might be present at property *without* the presence of "communicable disease." If it directly causes a condition of the

3

property, the contamination exclusion precludes coverage, just as if a "condition of property" was due to a pathogen, bacteria or other disease causing or illness causing "agent." A "condition of property" due to the presence of "communicable disease" is not subject to the contamination exclusion because the Policy does not define "contaminant" to include "communicable disease." It explicitly covers "communicable disease" as property damage.

The Court should grant Thor's motion for partial judgment on the pleadings (ECF 32) and deny FM's cross-motion for partial judgment on the pleadings. (ECF 38 & 44).

**II.   ARGUMENT**

   **A.   Rules of Insurance Contract Interpretation**

Thor and FM have relied on New York law in their briefs.

Under New York law, an insurance policy is a contract to which the normal interpretative rules apply. *State of New York v. Home Indemnity Co.*, 66 N.Y.2d 669, 671 (1985). The court's initial task is to attempt to ascertain the parties' intent from the wordings in the insurance contract itself. *Id*. at 671. The court must construe the policy as a whole, and "all pertinent provisions of the policy should be given meaning, with due regard to the subject matter that is being insured and the purpose of the entire contract." *Westchester Fire Ins. Co. v. Schorsch*, 129 N.Y.S.3d 67 (2020) (citing *County of Columbia v. Continental Ins. Co.*, 83 N.Y.2d 618, 628 (1994)).

When interpreting an insurance policy to determine if it has any ambiguity, the court is to focus on the "reasonable expectations of the average insured upon reading the policy and employing common speech." *Mostow v. State Farm Ins. Co.,* 88 N.Y.2d 321, 326–327 (1996) (citations omitted). Ambiguity exists where the wordings in the policy are "susceptible of two reasonable interpretations." *State of New York v. Home Indem. Co.*, 66 N.Y.2d at 671. Ambiguous provisions in an insurance policy construed in favor of the insured: "When an insurance carrier

4

drafts an ambiguously worded provision and attempts to limit its liability by relying on it, we will construe the language against the carrier." *Metropolitan Prop. & Casualty Ins. Co. v. Mancuso*, 93 N.Y.2d 487, 497 (1999). Policy exclusions are narrowly construed against the insurer. *Thomas J. Lipton, Inc. v Liberty Mut. Ins. Co.*, 34 NY2d 356, 361. Consequently, to "negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case." *Continental Cas. Co. v Rapid-American Corp.*, 80 NY2d 640, 652 (1993).

   **B. Communicable Disease is Property Damage Under the Policy and an Affirmative Grant of Coverage**

The Policy's "Property Damage" coverage has several components. It insures Real Property and Personal Property. (ECF 1-1 at 19). It provides a number of "Additional Coverages" that "are subject to the applicable limit of liability," "will not increase the Policy limit of liability," and "are subject to the Policy provisions, including applicable exclusions and deductibles." (*Id.* at 26).

The first of these coverage are "cyber" in nature. (*Id.* at 27-29).

The Policy also provides a number of "Other Additional Coverages," one of which is "Communicable Disease Response." (*Id.* at 32). Two things are required to trigger this coverage: (i) a location owned, leased or rented by the insured has the "actual not suspected" presence of communicable disease," and (ii) access to such location is limited, restricted or prohibited either by an order of an authorized governmental entity or by a "decision of an Officer of the Insured." (*Id.*). FM asserts that "communicable disease" is a "narrow" exception to the "contamination exclusion" that provides Thor limited coverage that otherwise would be removed from the Policy. (ECF 44 at 26-27).

FM's assertion contrary to a plain reading of the Policy. Nothing in the "Communicable Disease Response" provision references "contamination," "contaminants" or the "contamination exclusion." The provision does not state that "Communicable Disease Response" is afforded "notwithstanding" the "contamination exclusion." The "contamination exclusion" does not mention, reference or otherwise carve out an exception for "communicable disease." The only "exception" noted in the "contamination exclusion" concerns radioactive contamination, which is subject to a separate exclusion in the Policy.

> This Policy excludes the following unless directly resulting from other physical damage not excluded by this Policy: (1) contamination, and any cost due to contamination including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy. If contamination due only to the suspected presence of contaminant(s) directly results from other physical damage not excluded by this Policy, then only physical damage causd by such contamination may be insured. This exclusion D1 does not apply to radioactive contamination which is excluded elsewhere in this Policy.

(ECF 1-1 at 24).

The insurance industry has substantial experience in drafting exceptions to contamination exclusions. The pertinent portion of the so-called "qualified" pollution exclusion, included in general liability insurance policies during the 1970s and 1980s, contains an "exception" for the "sudden and accidental" discharge, release or escape of "contaminants or pollutants into or upon land, the atmosphere or any water course or body of water." The standard "qualified" pollution exclusion provides in pertinent part that:

> This policy does not apply:
>
> \* \* \* \* \* \*
> (d) to personal injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon

6

> land, the atmosphere or any water course or body of water; *but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental* * * *.

*Redding-Hunter Inc. v. Aetna Cas. and Sur. Co.*, 615 N.Y.S.2d 133, 134 (1994) (emphasis added).

If FM intended "Communicable Disease Response" coverage in the Policy to be an "exception" to the "contamination exclusion" it would have appended the same type of "tag" to the end of the "contamination exclusion" – as it did in the Policy for "radioactive contamination" – to state explicitly that "this exclusion does not apply to the actual not suspected presence of communicable disease at an insured location." FM did not do that because the Policy does not consider "communicable disease" to be a contaminant. There is no need to "except" from an exclusion something that is not subject to the exclusion in the first instance.

Instead, the Policy considers the "actual not suspected presence" of "communicable disease" at an insured location to be covered property damage. The Policy will then pay "the reasonable and necessary costs incurred by the Insured at such location with the actual not suspected presence of communicable disease." (ECF 1-1 at 32). It will also pay applicable Time Element coverages resulting from this "physical loss or damage of the type insured" under the Policy.

      C.      **The Contamination Exclusion is Inapplicable**

New York law construes coverage exclusions narrowly. FM has the burden to establish that its view that "communicable disease" is subject to the "contamination exclusion" is the *only* reasonable interpretation of the exclusion. *Rapid-American*, 80 NY2d at 652. FM cannot do so because its interpretation is objectively unreasonable.

As discussed above, Communicable Disease Response is one of the many different types of affirmative Property Damage coverages afforded by the Policy. On its face, an exclusion that

takes away coverage otherwise provided in the Policy must do so in "clear and unmistakable language." *Id*. The "contamination exclusion" in the Policy does not even use the words "communicable disease," let alone "clearly" and "unmistakably" state that coverage for "communicable disease" is excluded. Consequently, there was no need for FM to "except" communicable disease from the "contamination exclusion" because the "contamination exclusion" does not reach communicable disease.

Indeed, FM consciously chose to cover under its Policy damage and loss resulting from "communicable disease." Its interpretation of the "contamination exclusion" would eliminate this valuable coverage even though the Policy is devoid of the type of clear and explicit and exclusionary verbiage New York courts require for insurers to negate otherwise applicable coverage.

### III. CONCLUSION

FM agreed to pay losses resulting from the "actual not suspected presence of communicable disease" at property. "Communicable disease" is not one of the several "contaminants" FM defined as part of the "contamination exclusion" in the Policy.

The Court should grant Thor's motion for partial judgment on the pleadings (ECF 32) and deny FM's cross-motion for partial judgment on the pleadings. (ECF 38 & 44).

Dated: New York, New York
October 12, 2020

MORGAN, LEWIS & BOCKIUS LLP

By: */s/ Nicholas Schretzman*
Nicholas Schretzman, Bar No. 4753067
nicholas.schretzman@morganlewis.com
101 Park Ave.
New York, NY 10178-0060
+1.212.309.6000
+1.212.309.6001

Jeffrey Raskin (*pro hac vice* forthcoming)
jeffrey.raskin@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105
+1.415.442.1000
+1.415.442.1001

*Attorneys for Amicus Curiae*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 12, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and I hereby certify that a true and correct copy of the document was served on all counsel of record through the Court's CM/ECF system.

*/s/ Nicholas Schretzman*
Nicholas Schretzman