**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------------------------

|   |   |
|---|---|
| THOR EQUITIES, LLC, | : Civil Action No.: 20 Civ. 03380 (AT) |
| Plaintiff, | **STIPULATION AND ORDER** |
| v. | **GOVERNING THE** |
|   | **PRODUCTION OF DOCUMENTS** |
|   | **AND ELECTRONICALLY** |
| FACTORY MUTUAL INSURANCE COMPANY, | **STORED INFORMATION** |
| Defendant. | |

----------------------------------------------------------------------------------

IT IS HEREBY STIPULATED AND AGREED, by and between counsel for the undersigned parties (each a "Party" and collectively the "Parties"), subject to the approval of the Court, that the following Stipulation and Order shall govern the production of documents and electronically stored information produced through formal or informal means in the above-captioned action (the "Action").  In accordance with the Parties' stipulation and for good cause shown, it is HEREBY ORDERED:

1.  **Production of Electronically Stored Information ("ESI")**:

    a.  **TIFFs**.  Documents should be produced in the form of single-page, Group IV TIFFs at 300 dpi.  Each TIFF image should be named as its corresponding Bates number.  Original document orientation should be maintained (*i.e.*, portrait to portrait and landscape to landscape).  Bates numbers, confidentiality designations, and redactions should be burned into the TIFF image files.  TIFF image files should be provided in a self-identified "Images" folder.

    b.  **System Files**.  Common system and program files as defined by the NIST library (which is commonly used by discovery vendors to exclude system and program files from document review and production) need not be processed, reviewed, or

produced.

c.   **Metadata Fields and Processing**.  Absent special circumstances, each of the metadata and coding fields set forth below that can be reasonably extracted from a document shall be produced for that document, to the extent already in existence and reasonably accessible or available.  To the extent that metadata does not exist, is not reasonably accessible or available, or would be unduly burdensome to collect, nothing in this ESI Protocol shall require any Party to extract, capture, collect or produce such data.  The Parties are not obligated to populate manually any of the fields if such fields cannot be extracted automatically from a document using standard processing software, with the exception of the following fields: (1) BegBates; (2) EndBates; (3) BegAttach; (4) EndAttach; (5) Confidentiality Designation; (6) Custodian; (7) NativeLink; and (8) Source, which may be populated by the Party or the Party's vendor.  Any metadata fields for redacted documents that would reveal privileged information shall be excluded.

| Custodian | Individual from whom the produced document was collected |
|---|---|
| All Custodians | Individuals who had exact copies of the email message (Required if population was globally deduplicated) |
| Page Count | Total number of pages in the document |
| Attachment Count | Number of attachments; same as Family Count |
| Author | Author field extracted from the metadata of the native file |
| FROM | Sender of the email message |
| TO | Recipient(s) of the email message |
| CC | Recipient(s) of "carbon copies" of the email message |
| BCC | Recipient(s) of "blind carbon copies" of the email message |

| | |
|---|---|
| **Subject** | Subject field extracted from the metadata of the native file |
| **Date Sent** | Date the email message was sent (MM/DD/YYYY) |
| **Time Sent** | Time the email message was sent (HH:MM) |
| **Date Created** | The date the document was created |
| **Time Created** | The time the document was created<br><br>*Parties acknowledge that the Date and Time Created fields may not actually reflect the date and time the file was created, due to the ease of change to that field and the technical definition of the field (*e.g.*, the created date and time reflects the time when the file was created in that particular location on the computer or on the other storage device location). |
| **Date Last Modified** | The date the document was last modified |
| **Time Last Modified** | The time the document was last modified |
| **Date Received** | The date the document was received |
| **Time Received** | The time the document was received |
| **Time Zone** | The time zone the document was processed in (noted as, *e.g.*, PST, CST, EST, etc.) |
| **Doc Title** | The extracted document title of a document |
| **File Type** | Mail, attachment, individual file |
| **File Extension** | File extension of document (MSG, DOC, XLSX, etc.) |
| **File Name** | Name of original file |
| **File Size** | File size in bytes |
| **Hash Value** | MD5 Hash Value, unique document identifier |
| **Native File** | Link to Native File |
| **Text File** | Link to Text File |

d.   **Extracted Text Files.**   For each document, an extracted text file should be provided along with its corresponding TIFF image file(s) and metadata.  The file name of each extracted text file should be identical to that of the first image page of its corresponding document, followed by .txt.  File names should not contain

any special characters or embedded spaces.  The text of native files should be extracted directly from the native file.  However, if a document has been redacted, OCR of the redacted document will suffice in lieu of extracted text.  Also, if extracted text is not available in the native file, the documents should be processed by an OCR tool prior to production to extract available text so that the record is searchable.  If a Party, however, chooses not to OCR sets of documents that have been originally maintained in an image format or hard copy format because the utility of the OCR does not outweigh the expense, it need not provide OCR for such documents that do not have available extracted text.

e.      **Database Load Files/Cross-Reference Files.**  Documents should be provided with Concordance-compatible image and data load files (*i.e.*, .OPT and .DAT files) using standard Concordance delimiters.  The first line in each Concordance compatible .DAT file should be the header containing the agreed-upon field names, and each subsequent line should contain the fielded data for each document.  Concordance-compatible image and data load files (*i.e.*, .OPT and .DAT files) should be provided in a self-identified "Data" folder.

f.      **Native Files.**  Absent special circumstances, non-redacted PowerPoint files and other similar presentation files,  and non-redacted Excel files, .CSV files and other similar spreadsheet files shall be produced in native format ("Native Files").  Native Files should be provided in a self-identified "Natives" directory.  Each Native File should be produced with a corresponding single-page TIFF placeholder image, which will contain language indicating that the document is being produced as a Native File.  Native Files should be named with the beginning

Bates number that is assigned to that specific record in the production. A "NativeLink" entry for each spreadsheet should be included in the .DAT load file indicating the relative file path to each native file on the production media. Native Files should be produced with extracted text and applicable metadata fields as set forth in part c. above. For documents that contain redacted text, the Parties may either apply the redactions directly on the native file itself or produce TIFF image files with burned in redactions in lieu of a Native File and TIFF placeholder image. Each producing Party will make reasonable efforts to ensure that its discovery vendor, prior to conversion to TIFF, reveals hidden data from redacted Native Files that are produced as TIFF image files and will be formatted so as to be readable (for example, column widths should be formatted so that numbers do not appear as "########"). Under these circumstances, all single-page TIFF images shall include row and column headings.

g. **Requests for Other Native Files.** Other than as specifically set forth above, a producing Party need not produce documents in native format. If good cause exists for the receiving Party to request production of certain documents in native format, the receiving Party may request production in native format by providing: (1) a list of the Bates numbers of documents it requests to be produced in native format; and (2) an explanation of the need for reviewing such documents in native format. The producing Party shall not unreasonably deny such requests. Each document produced in response to such requests shall be produced with a "NativeLink" entry in the .DAT load file indicating the relative file path to each Native File on the production media, and all extracted

text and applicable metadata fields set forth in part c. above.

h. **Structured Data.** To the extent responding to a discovery request requires production of ESI contained in a database, the producing Party may comply with the discovery request by querying the database and generating a report ("Structured Data Report") in a reasonably usable and exportable electronic format (for example, in Excel or .CSV format). To the extent available and reasonably accessible, the first line in the Structured Data Report will show the column headers for each field of data included in the Structured Data Report. Unless otherwise agreed, the Parties have no obligation to provide a supplemental report for records and information post-dating the extraction of the Structured Data Report.

i. **Color.** Documents containing color need not be produced in color in the first instance. However, if good cause exists for the receiving Party to request production of certain documents in color, the receiving Party may request production of such documents in color by providing: (1) a list of the Bates numbers of documents it requests to be produced in color format; and (2) an explanation of the need for production in color format. The producing Party shall not unreasonably deny such requests, but need not make such production until the Parties reach agreement regarding the additional costs associated with the production of documents in color.

j. **Parent-Child Relationships.** Parent-child relationships (the association between e-mails and attachments) will be preserved. E-mail attachments will be consecutively produced with the parent e-mail record. For example, if a Party

produces an e-mail with its attachments, such attachments should be produced behind the e-mail in the order in which they were attached.

2.   **Production of Hard Copy Documents**

   a.   **TIFFs.**  Documents should be produced in the form of single-page, Group IV TIFFs at 300 dpi.  Each TIFF image should be named as its corresponding Bates number.  Original document orientation should be maintained (*i.e.*, portrait to portrait and landscape to landscape).  Bates numbers, confidentiality designations, and redactions should be burned into the TIFF image files.  TIFF image files should be provided in a self-identified "Images" folder.  Where reasonably possible, documents should be logically unitized.

   b.   **OCR Text Files.**  Optical Character Recognition ("OCR") text files shall be provided as a single text file for each document, not one text file per page.  Each file should be named with the beginning Bates number that is assigned to its corresponding document, followed by .txt.  OCR text files should be provided in a self-identified "Text" directory.  To the extent a document is redacted, OCR text files for such a document shall not contain text for redacted portions.

   c.   **Database Load Files/Cross-Reference Files.**  Documents should be provided with Concordance-compatible image and data load files (*i.e.*, .OPT and .DAT files) using standard Concordance delimiters.  The first line in each Concordance compatible .DAT file should be the header containing the agreed upon field names, and each subsequent line should contain the fielded data for each document.  Concordance-compatible image and data load files (*i.e.*, .OPT and .DAT files) should be provided in a self-identified "Data" folder.

d.    **Coding Fields.**   Absent special circumstances, documents should be produced with at least the following searchable information in accompanying delimited data files: 1) BegBates; (2) EndBates; (3) BegAttach; (4) EndAttach; (5) Confidentiality Designation; (6) Custodian; and (7) Source.   Individual Custodians should be identified using the convention "last name_first name." Entity/departmental custodians should be identified with a description of the entity or department.   A producing Party shall use a uniform description of a particular custodian across productions.

3.    **Bates Numbering**.    Each TIFF image should be assigned a Bates number that: (1) is unique across the entire document production; (2) maintains a constant length across the entire production (*i.e.*, padded to the same number of characters); (3) contains no special characters or embedded spaces; and (4) is sequential within a given document.  If a Bates number or set of Bates numbers is skipped in a production, the producing Party will so note in a cover letter or production log accompanying the production.

4.    **De-Duplication**.   A Party is required only to produce a single copy of a responsive document, and a producing Party may, but is not required to, de-duplicate responsive ESI across custodians by the use of MD5 or SHA-1 hash values at the document (*i.e.*, parent) level.  However hard-copy documents shall not be eliminated as duplicates of responsive ESI.  In addition, the identity of other custodians whose data was processed but where that data was deduplicated in the deduping process will be provided in a "Duplicate Custodian" field.  A producing Party shall use a uniform description of a particular custodian across productions.   Multiple custodians in the "Custodian" field shall be separated by a semicolon.

5.   **<u>Shipment/Encryption</u>**.  Electronic data productions may be shipped on CDs, DVDs, or hard drives, or through a secure File Transfer Protocol ("FTP").  The physical media label should contain the case name and number, confidentiality designation, production date, and Bates range being produced.  To maximize the security of information in transit, any media on which documents are produced may be encrypted by the producing Party.  In such cases, the producing Party shall transmit the encryption key or password to the requesting Party, under separate cover, contemporaneously with sending the encrypted media.  The encryption program used for production media should be one that is readily available and would not create delays accessing the encrypted data.  In the event that a Party utilizes an FTP for the production of documents, the information identified in this section to be provided with physical media shall be provided in a written production letter providing instructions for accessing documents through the FTP.

6.   **<u>Miscellaneous Provisions</u>**.  Except as to the formatting for production agreed to herein, all documents (electronic or otherwise) shall be produced as kept and maintained by the producing Party in the ordinary course of business.

The Parties shall make good faith efforts to comply with and resolve any differences concerning compliance with these specifications.  No Party may seek relief from the Court concerning compliance with these specifications unless it has conferred with the other Party.

Nothing in these specifications shall be interpreted to require disclosure of irrelevant or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity.  The Parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of

documents.  All productions are subject to the Stipulation and Protective Order Governing the Protection and Exchange of Confidential Material entered by the Court in this Action (ECF No. 50).

ESI that is (i) used primarily for backup or disaster recovery purposes; or (ii) stored on any computers servers, external hard drives, or other media created for disaster recovery purposes, need not be preserved.  A decision to preserve any ESI shall not be interpreted as an agreement that the preserved material is reasonably accessible ESI subject to search and production.  Nothing in this Agreement shall affect, in any way, a producing Party's right to seek reimbursement for costs associated with collection, review, and/or production of documents.

SO ORDERED:

_____

Date:

APPROVED AND AGREED TO:

/s/ Alexander M. Sugzda
Robin L. Cohen
Kenneth H. Frenchman
Alexander M. Sugzda
MCKOOL SMITH, P.C.
One Manhattan West
395 9th Avenue, 50th Floor
New York, New York 10001
Tel: (212) 402-9400
rcohen@mckoolsmith.com
kfrenchman@mckoolsmith.com
asugzda@mckoolsmith.com

*Attorneys for Plaintiff Thor Equities, LLC*

APPROVED AND AGREED TO:

/s/ Harvey Kurzweil
Harvey Kurzweil
Kelly A. Librera
George E. Mastoris
Matthew A. Stark
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
Tel: (212) 294-6700
hkurzweil@winston.com
klibrera@winston.com
gmastoris@winston.com
mstark@winston.com

Robert F. Cossolini
FINAZZO COSSOLINI O'LEARY MEOLA
& HAGER, LLC
67 East Park Place, Suite 901
Morristown, New Jersey 07960
Tel: (973) 343-4960
robert.cossolini@finazzolaw.com

*Attorneys for Defendant Factory Mutual
Insurance Company*