

200 Park Avenue
New York, NY 10166
T +1 212 294 6700
F +1 212 294 4700

**HARVEY KURZWEIL**
Partner
212 294 4620
HKurzweil@winston.com

December 4, 2020

**VIA ECF & EMAIL**
Hon. Analisa Torres, U.S.D.J.
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007
Torres_nysdchambers@nysd.uscourts.gov

Re: *Thor Equities, LLC v. Factory Mutual Ins. Co.*, No. 1:20-cv-03380-AT (S.D.N.Y.) – Defendant's Response to Plaintiff's Submission of Recent Authority

Dear Judge Torres:

  Factory Mutual Insurance Company ("FM Global") respectfully submits this letter in response to Thor Equities, LLC's ("Thor") Submission of Recently Decided Authority Relevant to Briefing on Motions for Judgment on the Pleadings, filed on December 1, 2020 (ECF No. 53).

  Of the dozens of decisions across the country involving claims against insurers stemming from the pandemic (the vast majority of which favor insurers), Thor chose to submit as supplemental authority in this action a stray Nevada state court case—*JGB Vegas Retail Lessee, LLC v. Starr Surplus Lines Insurance Co.* ("Nevada Decision") (ECF No. 53-1)—in which Thor's counsel happens to be counsel of record. But the Nevada Decision is neither binding nor even persuasive authority. It is an out-of-jurisdiction order by a state court interpreting a policy that differs in material respects from Thor's Policy at issue here.

  Most notably, Thor's statement that the "Pollution and Contamination Exclusion" considered by the court in *JGB Vegas* is "similar to the contamination exclusion at issue in the cross-motions for judgment on the pleadings" here (ECF No. 53 at 1) is belied by the plain language of the respective policies. While Thor's Policy contains a pure "Contamination Exclusion" and specifically defines "contamination" to include "virus" and other related terms (Compl. Ex. A (ECF No. 1-1) at 24, 76), the policy in *JGB Vegas* does not include a contamination exclusion at all, but rather a combined "Pollution and Contamination [Exclusion] Clause" covering both "POLLUTANTS and CONTAMINANTS." Indeed, as the Nevada Decision notes, the policy does not even define the word "contamination," but rather contains a definition for the compound term "POLLUTANTS and CONTAMINANTS," which appears nowhere in the FM Policy at issue here. Nevada Decision at 7 of 9. The inclusion of pollutants as part of the defined term, as well as the examples listed alongside the word "virus" in the definition itself (including smoke, vapor, soot, fumes, acids, alkalis, chemicals, waste and hazardous materials as defined by certain federal statutes), led the *JGB Vegas* court to conclude that it would not be "unreasonable" to conclude that the exclusion there was intended to apply to "traditional environmental and industrial pollution" and not "naturally-occurring communicable disease." *Id.*



Significantly, other than the single reference to "virus," *none* of the other terms in the *JGB Vegas* "Pollution and Contamination Exclusion" refers to agents typically associated with infectious disease. By contrast, the Contamination Exclusion in Thor's Policy contains numerous such terms, including "pathogen," "bacteria," "toxin," and, for good measure, "disease-causing agent." Compl. Ex. A at 76. Therefore, the Pollution and Contamination Exclusion at issue in *JGB Vegas*, and the court's reasoning in that case, do not offer any guidance whatsoever on the applicability of the materially different Contamination Exclusion in Thor's Policy here. To the contrary, they actually underscore FM Global's argument that the contamination exclusion in Thor's Policy was specifically designed to cover disease-causing agents like the novel coronavirus that is the subject of this litigation.

Moreover, even courts considering combined "Pollution and Contamination Exclusions" similar to the one at issue in *JGB Vegas* have found that the exclusion *does* apply to bar COVID-related claims. For example, just two days after the Nevada Decision, a federal court rejected the argument that the exclusion only covers "traditional environmental and industrial pollution" and held that, because the provision specifically refers to "virus" (as did the policy in *JGB Vegas*), it applies to bar COVID-19 claims. *See Zwillo V, Corp. v. Lexington Ins. Co.*, No. 4:20-00339-CV-RK, slip op. at 7-10 (Dec. 2, 2020) (ECF No. 31) (granting motion to dismiss based on Pollution and Contamination Exclusion).

The limitations of the Nevada Decision as persuasive authority are further underscored by the abundant case law to the contrary that has developed nationwide in recent months. Indeed, the vast majority of courts considering dismissal of COVID-related claims against insurance companies have found in favor of the insurers. Rather than inundate the Court with this multitude of relevant decisions from federal and state courts throughout the country, FM Global respectfully refers Your Honor to the "Covid Coverage Litigation Tracker" hosted and maintained by the University of Pennsylvania Carey Law School: https://cclt.law.upenn.edu/judicial-rulings/. This comprehensive nationwide database confirms that a large majority (and ever-increasing number) of courts considering COVID insurance claims have found in favor of the insurers. Of the 53 decisions (to date) on motions to dismiss involving the applicability of a contamination exclusion, more than 80% (44) have been decided in favor of the insurer.

To the extent the Court would find it helpful, FM Global would be glad to provide an exhaustive set of supplemental authorities.

FM Global appreciates the Court's time and attention to this matter.

Respectfully submitted,

*/s/ Harvey Kurzweil*

Harvey Kurzweil