UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _11/16/2023_
```

THOR EQUITIES, LLC,

                Plaintiff,

-against-

FACTORY MUTUAL INSURANCE COMPANY,

                Defendant.

20 Civ. 3380 (AT)

**MEMORANDUM**
**OPINION**

ANALISA TORRES, District Judge:

Plaintiff, Thor Equities, LLC ("Thor"), brings this action against Defendant, Factory Mutual Insurance Company ("FM"), seeking damages and a judgment declaring that FM is required to pay Thor for losses arising from the COVID-19 pandemic pursuant to its property insurance policy. Compl., ECF No. 1. On November 10, 2022, Thor moved for partial summary judgment and FM moved for summary judgment. ECF Nos. 150, 152. On September 29, 2023, the Court granted FM's motion, and denied Thor's as moot. ECF No. 174. This memorandum opinion sets forth the reasons for the Court's rulings in the September 29, 2023 order.

## BACKGROUND[1]

Thor, a New York-headquartered commercial landlord, rents properties across the country to hundreds of tenants for use in a variety of businesses, including office space, retail stores, restaurants, and bars. FM 56.1 ¶¶ 3–6, ECF No. 168. FM is an insurance company with its principal place of business in Rhode Island. *Id.* ¶¶ 1–2. On March 13, 2020, Thor purchased from FM a twelve-month insurance policy that provides coverage for property damage and

---

[1] The facts in this section are taken from the parties' Rule 56.1 statements and responses, unless otherwise noted. Disputed facts are so noted. Citations to a paragraph in a Rule 56.1 statement also include the opposing party's response. "[W]here there are no citations[,] or where the cited materials do not support the factual assertions in the [s]tatements, the Court is free to disregard the assertion." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (alteration omitted). On a motion for summary judgment, the facts must be read in the light most favorable to the nonmoving party. *Id.* at 69.

certain business interruption losses (the "Policy").  Policy, ECF No. 1-1[2]; FM 56.1 ¶ 42.  Coverage began on March 15, 2020, Policy at 2–3, days before state governments across the country adopted stay-at-home orders in response to the COVID-19 pandemic, FM 56.1 ¶¶ 26–34.

The Policy covers Thor's insured properties "against all risks of physical loss or damage," Policy at 10 (capitalization altered), as well as "time element" loss "directly resulting from physical loss or damage," *id.* at 45; *see* FM 56.1 ¶ 79, except as otherwise excluded.  *See, e.g.*, Policy at 20, 46.  Where applicable, time element coverage—commonly known as business interruption coverage—covers Thor's losses, such as lost rental income, from the interruption of its business.  12(c) Order at 2, ECF No. 63; *see, e.g.*, Policy at 52.  "The Policy [further] provides for a maximum per-occurrence limit of liability of $750 million, with various sublimits and time limits," and "defines an occurrence as the sum total of all loss or damage of the type insured, including any insured time element loss, arising out of or caused by one discrete event of physical loss or damage."  12(c) Order at 2 (cleaned up); Policy at 12–15, 78.

In addition to the Policy's general property insurance coverage, the Policy insures against specified property damage and business interruption events such as cyberattacks and supply chain disruptions.  *See, e.g.*, Policy at 27, 57, 60.  Two such provisions pertain to coverage in the case of a communicable disease.  These are the "Communicable Disease Response" provision, under the property damage additional coverage section, and the "Interruption by Communicable Disease" provision, under the additional time element coverage extensions section (the "Communicable Disease Provisions" or the "Provisions"), which together have a $1 million aggregate limit on liability.  *Id.* at 13, 15, 32, 64–65.  The Policy defines "communicable disease" as a disease that is "transmissible from human to human by direct or indirect contact

---

[2] Like the parties' Rule 56.1 statements, this Order cites to the Policy's file-stamped ECF page numbers at the top of each page as not all of the original pages are marked with page numbers.

with an affected individual or the individual's discharges, or . . . Legionellosis." *Id.* at 75. The Communicable Disease Response provision provides that

> [i]f a location owned, leased or rented by the Insured has the actual not suspected presence of communicable disease and access to such location is limited, restricted or prohibited [in excess of 48 hours] by:
>
> 1) an order of an authorized governmental agency regulating the actual not suspected presence of communicable disease; or
> 2) a decision of an Officer of the Insured as a result of the actual not suspected presence of communicable disease,
>
> this Policy covers the reasonable and necessary costs incurred by the Insured at such location with the actual not suspected presence of communicable disease for the:
>
> 1) cleanup, removal and disposal of the actual not suspected presence of communicable diseases from insured property; and
> 2) actual costs of fees payable to public relations services or actual costs of using the Insured's employees for reputation management resulting from the actual not suspected presence of communicable diseases on insured property.

Policy at 32 (emphases omitted). The Interruption by Communicable Disease provision provides that

> [i]f a location owned, leased or rented by the Insured has the actual not suspected presence of communicable disease and access to such location is limited, restricted or prohibited by:
>
> 1) an order of an authorized governmental agency regulating the actual not suspected presence of communicable disease; or
> 2) a decision of an Officer of the Insured as a result of the actual not suspected presence of communicable disease,
>
> this Policy covers the Actual Loss Sustained and extra expense incurred by the insured during the period of liability at such location with the actual not suspected presence of communicable disease.

3

*Id.* at 64–65 (emphases omitted).  The Interruption by Communicable Disease provision excludes loss resulting from "the enforcement of any law or ordinance with which the Insured was legally obligated to comply prior to the time of the actual spread of communicable disease." *Id.* at 65.

On April 30, 2020, Thor filed the instant suit for "anticipatory breach of contract and declaratory judgment," alleging that FM failed to provide coverage for Thor's "significant losses arising out of the novel coronavirus outbreak" under more than a dozen provisions of the Policy. Compl. ¶¶ 1, 20–52.  Thor contends that the Policy provides coverage for such losses.  *Id.* ¶¶ 3–7.  In August and September 2020, Thor and FM cross-moved for partial judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) concerning whether two of the Policy's exclusions barred coverage of Thor's losses.  ECF Nos. 32–34, 38–39.  In March 2021, the Court denied the parties' cross-motions.

Following the close of discovery, on November 10, 2022, Thor moved for partial summary judgment, contending that discovery had proven the reasonableness of its interpretation of the Policy's exclusions and requesting that such interpretation be "sustained as a matter of law." Pl. Mem. Partial Summ. J. at 3, ECF No. 151.  That same day, FM moved for summary judgment, arguing that (1) Thor's COVID-19-related losses do not constitute "physical loss or damage to property," barring recovery under all but the Communicable Disease Provisions; and (2) Thor failed to make the requisite showing for coverage under the Communicable Disease Provisions.  FM Mem. at 1–2, ECF No. 153.

In September, the Court granted FM's motion because, as a matter of law, the presence of the COVID-19 virus does not qualify as damage to property, and Thor has failed to satisfy the conditions for recovery under the Communicable Disease Provisions.  Thor's partial motion for summary judgment was thus denied as moot.

4

# DISCUSSION

I. <u>Legal Standard</u>

Summary judgment is appropriate where the record shows that "there is no genuine dispute as to any material fact" and that the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–26 (1986). A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party initially bears the burden of demonstrating the absence of a genuine dispute of material fact by citing materials in the record. *See Celotex*, 477 U.S. at 323–24; *Koch v. Town of Brattleboro, Vt.*, 287 F.3d 162, 165 (2d Cir. 2002). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine dispute of material fact. *Beard v. Banks*, 548 U.S. 521, 529 (2006); *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam). In doing so, the nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998), as "unsupported allegations do not create a material issue of fact," *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000). "[A] plaintiff's own self-serving statements are insufficient to raise a triable issue of fact." *Rhone v. United States*, No. 04 Civ. 5037, 2007 WL 3340836, at *9 (S.D.N.Y. Nov. 9, 2007). On a motion for summary judgment, courts view the record in the light most favorable to the nonmoving party. *Koch*, 287 F.3d at 165.

II. <u>COVID-19 Does Not Constitute Physical Loss or Damage</u>

Under New York law, "an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract." *Parks Real Est. Purchasing Grp.*

*v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006) (quotation marks omitted). Further, the policy must "be construed in favor of the insured, and ambiguities, if any, are to be resolved in the insured's favor and against the insurer." *10012 Holdings, Inc. v. Sentinel Ins. Co.*, 21 F.4th 216, 220 (2d Cir. 2021) (quoting *U.S. Fid. & Guar. Co. v. Annunziata*, 67 N.Y.2d 229, 232 (1986)). However, where policy provisions are "clear and unambiguous, they must be given their plain and ordinary meaning, and courts should refrain from rewriting the agreement." *Id.* (quotation marks omitted).

The Policy insures against "all risks of physical loss or damage." Policy at 10 (capitalizations altered). Thor argues that "the presence of physical substances," such as COVID-19, "on insured property that pose[] a danger to human health [] constitute physical loss or damage" under the Policy. Thor Opp. at 13, ECF No. 166. Thor further contends that "physical loss or damage can occur before [a] dangerous condition [such as COVID-19] manifests itself on property when that condition was certain to occur or there was an imminent threat of that condition occurring." *Id.* at 15.

This reading of the Policy, however, is contrary to the rulings of courts in this Circuit in myriad COVID-19 insurance-related cases interpreting comparable provisions. The instant case cannot be distinguished. As this Court has previously held, the actual or suspected presence of COVID-19 does not constitute physical damage as the virus is "harmful to people—not buildings." *Mario Badescu Skin Care Inc. v. Sentinel Ins. Co.*, No. 20 Civ. 6699, 2022 WL 253678, at *5 (S.D.N.Y. Jan. 27, 2022). Given the virus's short lifespan "in the air or on surfaces" of a property, "the presence of the COVID-19 virus . . . does not qualify as damage to the property itself." *Kim-Chee LLC v. Phila. Indem. Ins. Co.*, 535 F. Supp. 3d 152, 159 (W.D.N.Y. 2021). New York courts, in certain circumstances, have determined that the presence

6

of airborne contaminants can constitute "physical damage" sufficient to trigger coverage.  *E.g.*, *id.* at 159–60 (collecting cases).  However, the courts in those cases premised such conclusions on findings that the presence of the contaminant damaged the building itself.  *Id.* at 159.  The COVID-19 virus typically lasts for around three days on common indoor surfaces, Thor 56.1 ¶ 70, ECF No. 165, and its presence can be eliminated with standard cleaning and disinfecting products, Kurzweil Decl. Ex. 6, Lessler Expert Report ¶ 16, ECF No. 160-6.  "[A]n item or structure that merely needs to be cleaned has not suffered a 'loss' which is both 'direct' and 'physical.'"  *Tappo of Buffalo, LLC v. Erie Ins. Co.*, No. 20 Civ. 754, 2020 WL 7867553, at *4 (W.D.N.Y. Dec. 29, 2020) (citation omitted).  Thus, even if the virus was physically present at Thor's properties, its presence is short-lived, easily remediated, and "does not alter the covered property."  *Kim-Chee*, 535 F. Supp. 3d at 159.  In this way, COVID-19 is distinguishable from smoke, radiation, chemical dust and gas, asbestos, and other contaminants "which may persist and damage the covered property" itself.  *Id.*

     Thor's coverage claim is also barred by the Appellate Division's decision in *Roundabout Theater Co. v. Continental Cas. Co.*, 751 N.Y.S.2d 4 (1st Dep't 2002).  In *Roundabout*, the First Department established that under New York law, "loss of" property does not encompass "loss of use" of that property.  *Roundabout*, 751 N.Y.S.2d at 5–8.  Thor argues that unlike in *Roundabout*, its losses result from a physical change and an imminent threat of such change.  Thor Opp. at 20–21.  But its claim concerns COVID-19 "rendering [the insured properties] unusable for their intended purposes."  *Id.* at 14 (capitalizations altered); *see, e.g.*, *id.* at 9 ("The pandemic resulted in Thor's tenants not being able to use properties for their intended purpose, resulting in tenants being unable to pay their rent."); Thor 56.1 ¶ 90.  Because these losses

pertain to the use of the insured properties, they do not constitute "physical loss or damage" and do not come under the Policy's physical damage coverage.[3]

Finally, Thor argues that COVID-19 is a "physical event" under the Appellate Division's decision in *Pepsico, Inc. v. Winterthur Int'l Am. Ins. Co.*, 806 N.Y.S.2d 709 (2d Dep't 2005), and therefore constitutes physical loss. Thor Opp. at 15–16. Not so. In *Pepsico*, the "soda company was forced to destroy its soft-drink product when the company 'used faulty raw ingredients' provided by third-party vendors, which rendered the soda 'unmerchantable.'" *10012 Holdings*, 21 F.4th 216, 222 (quoting *Pepsico, Inc. v. Winterthur Int'l Am. Ins. Co.*, 788 N.Y.S.2d 142, 143 (2d Dep't 2004)). The destruction of the soda product "fell within the insurance coverage for 'all risks of physical loss of or damage to property,' including 'personal property' such as the soda," because a "'physical event' occurred that 'seriously impaired' the 'function' of the soda and caused the injury or damage." *Id.* (quoting *Pepsico*, 806 N.Y.S. at 711). Unlike the faulty raw ingredients in *Pepsico*, COVID-19 has not caused physical damage or seriously impaired the function of a product or other property. *Pepsico* is, therefore, inapposite.

For these reasons, Thor cannot recover under the Policy's provisions requiring physical loss or damage.

---

[3] This holding is further supported by the Second Circuit's finding that no "authority in New York [has] diverge[d] from the holding in *Roundabout Theatre*, which state and federal courts in New York have (at either the motion to dismiss stage or on summary judgment) uniformly applied since the start of the COVID-19 pandemic to deny coverage under similar insurance provisions where the insured property itself was not alleged or shown to have suffered direct physical loss or physical damage." *10012 Holdings*, 21 F.4th at 221; *see also id.* (listing cases); *SA Hosp. Grp., LLC v. Hartford Fire Ins. Co.*, No. 21 Civ. 1523, 2022 WL 815683, at *2 (2d Cir. Mar. 18, 2022) (noting that in *10012 Holdings*, the Second Circuit refused to certify the question to the New York Court of Appeals as "there was no 'disagreement in the lower New York courts' about the meaning of 'direct physical loss.'"). Thor notes that the Court of Appeals has granted leave to appeal in a case concerning property insurance coverage for COVID-19-related losses. Thor Opp. at 2. This grant, however, does not alter the Court's application of the instant facts to the well-established law in this Circuit.

III.    <u>The Communicable Disease Provisions</u>

Because Thor is unable to claim coverage for COVID-19-related losses under provisions of the Policy that require physical loss or damage, Thor's only viable claims arise under the Policy's two Communicable Disease Provisions, Thor 56.1 ¶¶ 15–47; FM Mem. at 5, which provide an aggregate sublimit of $1 million of coverage, FM 56.1 ¶¶ 97, 103; Policy at 13, 15, 32, 64–65. However, as a matter of law, Thor has failed to meet the contractual prerequisites to be entitled to recovery under the Provisions. FM is, therefore, entitled to summary judgment.

As a threshold matter, the parties dispute whether the Communicable Disease Provisions also require "physical loss or damage" on the insured property as a condition for coverage. *See* FM 56.1 ¶ 103. Thor argues that the Provisions, like the Policy's other provisions, require a showing of physical loss or damage. Thor Opp. at 9–10. Thor makes this argument in support of its assertion that the COVID-19 virus causes physical loss or damage. *Id.* FM disagrees. FM Mem. at 5.

The mere fact that the parties disagree on the proper interpretation of the contract does not render the contractual language ambiguous. *See Metro. Life Ins. Co. v. RJR Nabisco, Inc.*, 906 F.2d 884, 889 (2d Cir. 1990) ("Language whose meaning is otherwise plain is not ambiguous merely because the parties urge different interpretations in the litigation."). "Contract language is not ambiguous if it has 'a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself.'" *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989) (alteration in original) (quoting *Breed v. Ins. Co. of N. Am.*, 46 N.Y.2d 351, 355 (1978)).

Finally, "[u]nder New York law an interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless is not preferred and will be avoided if

9

possible." *Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992) (cleaned up). "Rather, an interpretation that gives a reasonable and effective meaning to all terms of a contract is generally preferred to one that leaves a part unreasonable or of no effect." *Id.* (cleaned up). Thus, when interpreting a contract, a court must "consider the entire contract" and "choose the interpretation . . . which best accords with the sense of the remainder of the contract." *Id.* (cleaned up). *See CP III Rincon Towers, Inc. v. Cohen*, 666 F. App'x 46, 51 (2d Cir. 2016) ("It is well-established that we disfavor readings of a contract that render provisions of an agreement superfluous.").

Based on the plain language of the Policy, the Court finds that the Communicable Disease Provisions unambiguously provide coverage regardless of physical loss or damage. The "additional coverage" and "additional coverage extension" sections of the Policy contain coverage provisions unencumbered by the conditions set for the rest of the Policy, unless so stated. Some of these provisions contain explicit language conditioning coverage on physical loss or damage. *See, e.g.*, Policy at 30, 65 ("accounts receivable" and "on premises services" provisions). Others do not. *See, e.g.*, Policy at 63–64 ("crisis management" provision). The Communicable Disease Provisions do not contain such language and, therefore, are not conditioned on such a requirement. The Provisions are void of any ambiguity in this regard. To hold to the contrary would render the other additional coverage provisions that contain such language requiring physical loss or damage as "superfluous or meaningless." *Galli*, 973 F.2d at 149. To give effect to the entire contract, the Communicable Disease Provisions must be read as a carveout from the Policy's prevailing requirement of physical loss or damage to trigger coverage.[4]

---

[4] This reading is also supported by the parties' understanding of the Provisions. *See, e.g.,* Kurzweil Decl. Ex. 22, Berkowitz 30(b)(6) Tr. 184:20–185:17, 187:20–188:2, ECF 160-22 (describing Thor's understanding that Communicable Disease Provisions do not require a showing of physical loss or damage); Kurzweil Decl. Ex. 50 (email from Thor's insurance consultant explaining that without "a physical trigger (damage to Thor's property),"

10

Although Thor is not barred from coverage under the Communicable Disease Provisions based on the lack of physical loss or damage at its insured properties, it has failed to meet the requirements for coverage. The Provisions require Thor to show (1) the "actual not suspected presence" of COVID-19 on insured property; and (2) that access to that property was "limited, restricted or prohibited by" (a) a government order "regulating the actual not suspected presence of communicable disease," or (b) a decision of a Thor corporate officer "as a result of the actual not suspected presence of communicable disease." Policy at 32, 64–65.

The parties dispute whether Thor has established the first requirement, the "actual not suspected presence" of COVID-19 on the insured properties. *See* Thor 56.1 ¶ 87–88; FM 56.1 ¶¶ 153–155. In any event, Thor cannot satisfy the second condition: that access to the insured properties was "limited, restricted or prohibited by" either a government order "regulating the actual not suspected presence of communicable disease" or a decision of a Thor corporate officer "as a result of the actual not suspected presence of communicable disease." As a court in this District has previously found, government orders regulating access to properties in the first months of the COVID-19 pandemic "were based on whether a business was 'essential,' *not* on whether there was confirmed presence of COVID-19 at the business." *Spirit Realty Cap., Inc. v. Westport Ins. Corp.*, 568 F. Supp. 3d 470, 476 (S.D.N.Y. 2021); *see* FM 56.1 ¶¶ 32–34 (describing New York, Illinois, and Florida's March and April 2020 statewide closures of non-essential businesses); *see also* Kurzweil Decl. Ex. 4, D'Ambrosio 30(b)(6) Tr. at 323:13–324:2, ECF No. 160-4 ("It's my belief that the orders closed things like non-essential retail and office buildings . . . but did not say you're prohibited from stepping foot into said building."). Thor's properties "would have been affected by the orders whether or not [] COVID-19 had been

---

Thor was only covered by the Communicable Disease Provisions for COVID-19-related losses); *id.* (confirming that Thor "came to the same conclusion"); FM 56.1 ¶¶ 56–60, 70, 119–23.

11

confirmed at its locations; the orders, therefore, were not 'regulating the actual not suspected presence of communicable disease,' as required to trigger coverage under the Policy." *Spirit Realty*, 568 F. Supp. 3d at 476.

Finally, Thor does not argue, nor does evidence adduced in discovery substantiate, that a Thor corporate officer decided to limit, restrict, or prohibited access to the properties "as a result of the actual not suspected" presence of COVID-19. *See* FM 56.1 ¶¶ 36–38; D'Ambrosio 30(b)(6) Tr. at 106:6-109:5, 115:16-118:11, 134:10-136:16 (discussing property closures due to low or no occupancy); FM Mem. at 30; FM Reply at 15, ECF No. 171; *cf.* Thor Opp. at 9 (noting that "[t]he pandemic resulted in Thor's tenants not being able to use properties for their intended purpose," and not that Thor limited or restricted access to such properties); Compl. ¶ 18 ("Many of the brick-and-mortar business premises that Thor owns and rents have been shuttered by these various stay-at-home orders."). Rather, the insured properties were closed because the projected losses of remaining open exceeded Thor's losses from closing the premises, government orders restricted access as described above, or Thor's tenants elected to forgo access because the properties could not be used as intended. At no point did "a decision of an Officer . . . as a result of the actual not suspected presence" of COVID-19 limit, restrict, or prohibit access to Thor's insured properties. Policy at 32, 65.

Because Thor fails to establish the second contractual requirement for coverage under the Communicable Disease Provisions, it cannot recover under the Provisions.

## CONCLUSION

For the foregoing reasons, the Court reaffirms its September 29, 2023 order granting FM's motion for summary judgment and denying Thor's motion for partial summary judgment as moot. Accordingly, Thor's right to appeal runs from the date of this opinion.

SO ORDERED.

Dated: November 16, 2023
      New York, New York

_____
ANALISA TORRES
United States District Judge